| | |
|---|---|
| **CHRISTOPHER JOHN BILLESDON**, <br><br> Plaintiff, <br><br> v. <br><br> **WELLS FARGO SECURITIES, LLC,** <br><br> Defendant. | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I.   BOTTOM LINE UP FRONT

Plaintiff Christopher Billesdon ("Billesdon") seeks partial summary judgment as to liability only against Defendant Wells Fargo Securities, LLC ("Wells Fargo") for failure to accommodate under Violation of Americans with Disabilities Act ("ADA"), which is part of Count I of his Complaint. The facts of this case are unique and place Billesdon in a very good position for succeeding on a plaintiff's summary judgment motion.   Wells Fargo's own internal communications, coupled with the deposition testimony of its own Accommodations Consultant/Expert who authored most of those documents, creates an evidentiary trail that leads to a singular conclusion – no rational jury could possibly find in Wells Fargo's favor on Billesdon's claim for failure to accommodate and failure to engage in the interactive process in good faith. The paper trail shows indisputably that Wells Fargo affirmatively, effectively and constructively denied Billesdon's reasonable request for accommodation, as well as failed to engage in good faith in the interactive process while doing so. Further, because Billesdon's motion is based on Wells Fargo's own documents and testimony, and the reasonable inferences

to be drawn therefrom, Wells Fargo cannot produce the necessary evidence in response to raise any genuine issues of material fact.

Although Billesdon expects Wells Fargo to file a summary judgment motion relying heavily on the Reduction in Force ("RIF") it ultimately used to terminate Billesdon, the RIF is not dispositive on Billesdon's failure-to-accommodate claim. Since discriminatory intent is not an element of such claims, *McDonnell Douglas* burden-shifting is not implicated and Billesdon is not required to show the RIF is a pretext. However, the fact that Wells Fargo was secretly orchestrating to terminate Billesdon with a RIF, while it continued to pretend to engage in a sham interactive process, most certainly goes toward its lack of good faith.

## II.      UNDISPUTED MATERIAL FACTS

### A.      Billesdon's history of disability.

Shortly after graduating high school in 1990, Plaintiff Christopher Billesdon was involved in a catastrophic fall from a balcony that resulted in a fractured spine and significant nerve damage resulting in the paralyzing of his colon and bladder that will never heal. Complaint at ¶ 22; Ex.. Since that time, Billesdon has been prescribed, and has utilized, a combination of laxatives to counteract his colon/bladder paralysis and facilitate the production of bowel movements. [*Id*. at ¶ 23; Exhibit[1] DD, Billesdon Deposition at 19:16-54:15; 169:24-171:4]. More recently, he also must use a catheter to urinate. [*Id*.] The complications from Billesdon's complex medical conditions are profound and the ongoing ordeal that has become Billesdon's daily routine, just to perform two of the most basic bodily functions, would be incomprehensible to most people. [Ex. CC, BILLESDON 000676][*Id*.]  Over time, some of Billesdon's interventions and medications have stopped working, causing Billesdon to continually make

---

[1]  All "Ex." citations refer to the Exhibits described and filed simultaneously with the Appendix in Support of Plaintiff's Partial Motion for Summary Judgment.

adjustments, which increases the risk he will end up in painful and/or embarrassing situations. [Ex. CC, BILLESDON 000676]

**B.     Billesdon's distinguished 25-year career with Wells Fargo.**

Despite his serious and ongoing medical conditions, Billesdon was a highly successful employee at Wells Fargo and its predecessors for nearly 25 years. [Ex. CC, BILLESDON 000676]  Since 1997, Billesdon climbed the ranks and always strove to be a top producer, while trying not to let his disability hold him back. [Ex. CC, BILLESDON 000676]

Throughout his long and distinguished career, Billesdon's annual performance evaluations at Wells Fargo reflect glowing commendations of his extraordinary sales production, ethics and compliance orientation, culture-carrying, mentoring of junior employees, indefatigable work ethic and unfailing commitment to the betterment of the franchise. [Ex. W].

**C.     Billesdon's formal request for reasonable accommodation.**

On August 31, 2021, Billesdon, through an ADA Advocate and law firm, made a formal request to work from home after the COVID restrictions were lifted ("WFH Accommodation Request"). [Ex. B WF-0003892-3894; WF00004593] The medical necessity for Billesdon's WFH Accommodation Request was duly supported by a letter from Billesdon's physician. This supporting medical documentation describes the history of Billesdon's disability and explains that Billesdon found he was able to mitigate his symptoms much more effectively while working from home during COVID. *Id*. It further notes that Billesdon could attend to his symptoms immediately and in privacy without embarrassment while working from home, and also adjust his medications as needed. These factors are noted to alleviate a significant amount of stress from Billesdon, which tends to exacerbate GI symptoms. *Id.*

As explained in more detail below, and in the accompanying timeline, Wells Fargo failed to respond to Billesdon's WFH Accommodation Request for two months, despite several more attempts to reach out to Wells Fargo. [Exs. B - F]

**D.    Wells Fargo assigns Billesdon's case to an Accommodation Consultant.**

Finally, after considerable prompting and escalation, Wells Fargo acknowledged Billesdon's WFH Accommodation Request on October 21, 2021. [Ex. F, WF-00004605] At that time, Wells Fargo assigned his case to an Accommodation Consultant, Joanne Davis, an experienced accommodation consultant ("WF's ADA Expert"). [Ex. G, WF-00004624]

WF's ADA Expert testified that she has considerable experience and expertise in disability services and accommodations. [Ex. Z. Davis Depo at 23:10-24:16] She also testified that Wells Fargo hired her to review accommodation requests and make recommendations based on her experience and expertise. [Ex. Z at 24:17-25:5] Indeed, Nancy Lenart, Wells Fargo's Senior Vice President of Human Resources, described Davis, as an accommodations management consultant at Wells Fargo, as the expert on accommodations and deferred to her on many questions. [Ex. AA, Lenart Depo. at 51:18-22; 75:16-17; 77:21-24; 104:9-10; 105:23-106:23]

WF's ADA Expert reviewed Billesdon's case and then determined that he suffered from a disability and his WFH Accommodation Request was reasonable and medically supported. [Ex. A; Ex. Z at 17:18-18:18] Thereafter, she set about getting Billesdon's managers to agree with the WFH Accommodation Request, which they repeatedly denied in private without informing Billesdon. [Ex. A, WF-00003898-3918]

**E.** **Wells Fargo actually, constructively and effectively denies Billesdon's WFH Accommodation.**

As set forth in more detail below and in the concurrently-filed timeline,[2] Wells Fargo internally denied Billesdon's WFH Accommodation Request and also denied limited versions of that request that WF's ADA Expert suggested on her own. [Ex. A, WF-00003898-3918]. For instance, on November 3, 2021, Billesdon's manager made it very clear that Billesdon's line of business ("LOB") was not going to allow Billesdon to work from home when everyone returned after the COVID restrictions were lifted. [Ex. A, WF-00003911] WF's ADA Expert confirmed in her deposition that Iannuzzi decided on November 3, 2021 not to grant Billesdon's WFH Accommodation and never changed his mind on that. [Ex. Z, at 195:4-199:25; 232:23-233:4] She testified that she was making a recommendation for a reasonable accommodation and they were not wanting to do that. [Ex. Z, at 200:21-208:4] She also conceded there were no undue hardships identified by the LOB. [Ex. Z, at 101:4-10; 214:7-18]

When WF's ADA Expert, on her own, offered a six-month WFH Accommodation, it was likewise rejected by Billesdon's managers. [*Id.*] Although Wells Fargo chose to keep this critical information from Billesdon, the evidence shows that both his indefinite WFH Accommodation Request and Wells Fargo's own ADA Expert's limited six-month WFH Accommodation Recommendation, were both rejected by Wells Fargo's senior managers, and WF's ADA expert was told to pursue an in-office accommodation only. [*Id.*] WF's ADA Expert admitted in her

---

[2]  The best way to capture the two conflicting trajectories of how Wells Fargo was handling Billesdon's WFH Accommodation Request behind the scenes vs. what they were telling Billesdon is through a detailed timeline, which is attached as Exhibit 1 to Plaintiff's Appendix of Exhibits. All of the documents cited in the timeline are also cited in the Memorandum of Law; the timeline is included for ease of reference to summarize the supporting evidence all in one place.

deposition that she did not tell Billesdon that his LOB said no to his WFH Accommodation. [Ex. Z at 261:1-263:5]

## F.     Wells Fargo's decision to terminate Billesdon rather than accommodate him.

Despite WF's ADA Expert's analyses and recommendation that WFH was reasonable and no undue hardship was shown, she contacted Billesdon to see if there was an in-house accommodation that would work. On December 6, 2021, Wells Fargo received word from one of Billesdon's GP that an in-office accommodation would not be effective to accommodate Billesdon's disability, and that a bathroom needed to be adjacent to his work space. [Ex. A, WF-00003904]

Thereafter, Wells Fargo secretly scrambled to add Billesdon's position to a RIF that had already been finalized and approved on November 16, 2021 and at that time did not include Billesdon. [Ex. O, WF-00004509] Indeed, the RIF documents show only one person was selected by Iannuzzi with the job title of a different person. [Exs. I - N] John Fitzhugh is who Iannuzzi had selected prior to completing the forms and prior to November 16, 2021. [*Id.*] However, once Wells Fargo learned Billesdon's in-office accommodation was not an option, Billesdon was added to the RIF.  Again, these two events happened on the exact same day!

After receiving this additional medical information and consulting with in-house counsel, WF's ADA Expert, requested that Billesdon's managers try a shorter three-month WFH Accommodation. [Ex. A, WF-00003901-3902] She even told them the accommodation request came at the advice of counsel. *Id.* This request was also effectively denied, as WF's ADA Expert admitted in her deposition. [Ex. Z 193:5-194:15; 274;3-17] However, she still did not tell Billesdon; instead she said she had "no news yet." [Ex. A, WF-0003900; Ex. Z at 62:4-63:6]

The following week, Wells Fargo received additional information from Billesdon's long-term physician that more specifically stated that an in-office accommodation would likely be ineffective. [Ex. A, WF-00003898] Wells Fargo thereafter identified Billesdon as the employee to be terminated under the purported RIF. Indeed, the testimony of numerous employees, including WF's ADA Expert, is that Billesdon's impending termination was known around December 17, 2021. [Ex. S, WF-00005410; Ex. Z at 130:3-131:10; Ex. BB, Doyle Depo. at 240:17-22] WF's ADA Expert testified at her deposition that she learned from in-house counsel that Billesdon was going to be terminated. [Ex. Z, at 287:13-16] She admitted in her deposition that she continued to let Billesdon believe he would be accommodated, even though she knew he would be terminated. [Ex. Z at 134:11-135:12; 296:20-297:6]

On December 31 2021, WF's ADA Expert again consulted with in-house counsel. After that exchange, Wells Fargo changes course and says Billesdon does not need an accommodation because he is already being accommodated. [Ex. A, WF-00003896-3897] This prompts another response from Billesdon's ADA advocate, which Wells Fargo again ignores. [Ex. A, WF-00003896]

Incredibly, after getting several more legal consults with in-house counsel, WF's ADA Expert *closes Billesdon's accommodation case* on January 14, 2021. [Ex. A, WF-00003895]. She admits in her deposition that she did so even though Billesdon had yet to receive any formal decision. [Ex. Z, 53:19-54:5] Then, knowing full well that he is being terminated, WF's ADA Expert tells Billesdon he can reopen another case when Wells Fargo issues a new return to office mandate. She then testified that she knew Billesdon would have to return to work when Wells Fargo announced the RTO because he no longer had an open accommodation case. [Ex. Z, 270:12-271:15]

On February 9, 2022, Wells Fargo announced that employees are required to return to the office on March 14, 2022. [Ex. V]

On February 24, 2022, Billesdon is terminated pursuant to a purported RIF. [Doc. No. 56-4 at ¶ 26.]

## IV.   LEGAL ARGUMENT

### A.   Summary Judgment standard of review.

Summary judgment may be granted when the moving party shows that there is no genuine issue of material fact, and it is legally entitled to judgment. See *Kitchen v. Upshaw*, 286 F.3d 179, 182 (4th Cir. 2002), citing Fed.R.Civ.P. 56(c). Where, as here, the moving party would bear the burden of proof at trial, it satisfies its initial burden by producing evidence upon which a reasonable jury could return a favorable verdict. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 614 n. 10 (4th Cir. 1999). After this initial showing, summary judgment will be granted unless the opponent produces evidence upon which a reasonable jury could return a verdict in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-255; *Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649 (4th Cir. 2002). The opponent's burden cannot be met with conclusory or speculative allegations, or a "mere scintilla" of evidence. See *Thompson*, 312 F.3d at 649.

### B.   Billesdon can show by undisputed facts that no reasonable jury could return a verdict for Wells Fargo.

To prove a failure to accommodate claim under the ADA, Billesdon must prove: (1) he was an individual who had a disability within the meaning of the statute; (2) Wells Fargo had notice of his disability; (3) with reasonable accommodation he could perform the essential functions of the position; and (4) Wells Fargo refused to make such accommodations. *Wilson v. Dollar Gen. Corp*., 717 F.3d 337, 345 (4th Cir. 2013). As noted above, the burden-shifting of *McDonnell Douglas* does not apply to claims for failure to accommodate because discriminatory

animus is not an element of the claim. *Meyer v. DynCorp Int'l, LLC* 2020 U.S. Dist. LEXIS 168574, *29 (Dist. MD, Sept. 14, 2020). Instead, after a plaintiff making such a claim establishes his prima facie case, the burden shifts to the defendant to show the proposed accommodation "will cause 'undue hardship in the particular circumstances.'" *Halpern v. Wake Forest Univ. Health Scis*., 669 F.3d 454, 464 (4th Cir. 2012).

Billesdon can meet all his required elements with undisputed facts and Wells Fargo has already admitted it has no facts to meet its burden on undue hardship.

### 1. Billesdon is an individual who has a disability.

Wells Fargo is not expected to dispute this element. The ADA defines an individual with a "disability" as an individual with "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include working, eating, and caring for oneself, as well as operation of major bodily functions, including digestive, genitourinary, bowel, bladder and neurological. 29 CFR § 1630.2; see also, *Green v. Am. Univ.* 647 F.Supp.2d 21, *29-30) (DC Dis. Aug. 21, 2009) (conditions that create a "fecal urgency" constitute a disability); *Crawford v. N.Y. Life Ins., Co*., 2006 U.S. Dist. LEXIS 69585, at *4 (E.D.N.Y. Sept. 27, 2006) ( plaintiff's symptoms affecting her bowels impaired the major life activity of eliminating bodily waste); *Workman v. Frito-Lay, Inc*., 165 F.3d 460, 467 (6th Cir. 1999) (controlling one's bowels is a major life activity); *Ryan v. Grae & Rybicki, P.C*., 135 F.3d 867, 871-73 (2nd Cir. 1998) (elimination of bodily waste may constitute a major life activity).

There is ample undisputed medical evidence that demonstrates Billesdon meets these definitions. In fact, his complicated medical condition checks the boxes of multiple

different "major life activities." He is, without question, an individual with a disability.

Further, in its Supplemental Responses to Interrogatories Wells Fargo admitted: "Defendant currently does not contend that Plaintiff was not a qualified individual with a disability as defined under the ADA. . . " [Ex. X, Wells Fargo Supplemental Response to Interrogatory No. 12]

**2.      Wells Fargo had notice of Billesdon's disability**.

Wells Fargo is not expected to challenge this element and, indeed, it cannot. There is a long and distinguished paper trail supporting its notice of Billesdon's disability. [Ex. A, WF-00003895-3919] At the very latest, Wells Fargo was put on notice on August 31, 2021, when Billesdon formally requested an accommodation through his ADA advocate, attaching pertinent medical records. [Ex. B, WF-00003892-3894; WF00004593]

**3.      Billesdon could perform the essential functions of his position with a reasonable accommodation.**

The undisputed facts also establish that Billesdon could perform the essential functions of his job with a reasonable accommodation. There is no question in this case that Billesdon had been performing the essential functions of his position for years, despite his disability. In fact, when he worked in-office in Los Angeles and when he worked from home in Charlotte, he was the top producer who received excellent performance reviews every year. [Ex. W, Billesdon's performance reviews]

Moreover, in its discovery responses, Wells Fargo admitted that Billesdon could perform the essential functions of his job. To wit, "Defendant responds that the following non-exhaustive facts support the contention that Plaintiff was able to perform the essential functions of the job. . ." [Ex. X, Wells Fargo Supplemental Response to Interrogatory No. 13]

In fact, Wells Fargo's position appears to be that Billesdon could perform the essential functions of his position *without* any accommodation. Toward that end, Wells Fargo is expected to erroneously argue that Billesdon's requested WFH Accommodation was not "medically necessary" and, therefore, not reasonable. Given the documentary evidence, both of these ships have sailed. First, WF's ADA Expert concluded multiple times that Billesdon's doctor notes provided sufficient support that his WFH Accommodation was medically necessary. [Ex. A, WF-00003918; Ex. Z at 17:18-18:18] WF's ADA Expert also concluded that Billesdon's WFH Accommodation was reasonable. [*Id.*] In fact, even Wells Fargo's in-house counsel concluded that a three-month trial of working from home should be given to Billesdon. [Ex. A, WF-00003901-3902] Wells Fargo cannot belatedly try to undo the determinations already made by its own in-house ADA Expert and in-house legal counsel. Indeed, even if Wells Fargo tries to argue that its ADA Expert did not have authority to make the final decision about whether to deny the accommodation, she is most certainly the expert Wells Fargo put in place to evaluate whether an employee's accommodation request was reasonable and appeared medically necessary based on the supporting documentation. [Ex. Z at 24:17 - 25:5]And she unquestionably made those determinations on behalf of Wells Fargo. [Ex. A, WF-00003901-2918; Ex. Z at 17:18-18:18]

Moreover, under Wells Fargo's misguided theory of this case is that "Plaintiff was fully accommodated, pursuant to his request and the medical documentation provided to the Accommodations Consultant, Joanne Rusnak Davis." [Ex. X, Second Supplemental Response to Interrogatory No. 16.] This admission confirms that Wells Fargo agrees that Billesdon provided WF's ADA Expert with sufficient medical documentation to support the medical necessity of his

WFH Accommodation Request and, since Wells Fargo purportedly granted that request, it cannot belatedly argue now that it was not reasonable.

Accordingly, there is no question that Billesdon could perform the essential elements of his position with a reasonable accommodation.

### 4. Wells Fargo refused such reasonable accommodations.

Despite the post-hoc gloss Wells Fargo tries to place on Billesdon's accommodation case, the documentary evidence from its own files tells the truth - Wells Fargo affirmatively, constructively and effectively denied Billesdon's WFH Accommodation Request.

### a. Billesdon's WFH Accommodation was internally denied by November 3, 2021.

On August 21, 2021, Billesdon formally requested that Wells Fargo accommodate his disability by allowing him to work from home once he is otherwise required to return to the office. [Ex. B, WF-0003892-3894; WF00004593] Notably, he did not put any time limits on this request or indicate that it was a trial run. [*Id.*]

Wells Fargo's own paper trail shows that Billesdon's managers, John Templeton ("Templeton") and Chris Iannuzzi ("Iannuzzi") effectively denied his WFH Accommodation as early as October 28, 2021 and no later than November 3, 2021. [Ex. A, WF-00003911-0003916] In the first call with Iannuzzi on October 28, 2021, Iannuzzi was immediately resistant to the idea of an accommodation for Billesdon. He expressed concern about "communications and information exchange" if Billesdon was to continue working from home. When WF's ADA Expert pointed out that the LOB was making it work during COVID, he said the LOB was "hoping to go back to how it was before COVID." [Ex. A, WF-00003916]

On November 1 2021, Billesdon's managers showed even more resistance. [Ex. A, WF-00003915] Iannuzzi identified three concerns, one of which was why Billesdon never needed a

WFH accommodation before. WF's ADA Expert correctly told him this concern was irrelevant. His second concern was his previously mentioned "communications" concern that was previously addressed. WF's ADA Expert again pointed out that it was working effectively during COVID, and Iannuzzi again could only respond that "when they return to work, the LOB will be in the office five days per week." Most tellingly, Iannuzzi wanted to know what the LOB "needed in regards to pushing back" on Billesdon's WFH Accommodation Request. WF's ADA Expert explained to him that the LOB would need to demonstrate a "business hardship." Iannuzzi also raised a third concern about travel accommodations, which was a non-issue for Billesdon as he had already been managing his disability while traveling. [Ex. A, WF-00003912]

Iannuzzi's comments in the November 3, 2021 phone call confirmed his position - working from home was a "no" because it would not be "effective." [Ex. A, WF-00003911]  He made it clear that everyone was expected to return to the office after COVID, even Billesdon. After Iannuzzi flat out refused the permanent WFH Accommodation, WF's ADA Expert, acting on her own, asked if the LOB would try a six-months trial WFH. Again, the unequivocal response was "no." She pressed further, wanting to know "*why this employee could not be accommodated*" with a WFH Accommodation when the LOB had been working from home during COVID. Iannuzzi repeated that working from home would not work and even a six-month trial "*would just be delaying the inevitable*." Only an in-office accommodation would work. [Ex. A, WF-00003911] As such, by November 3, 2021, liability against Wells Fargo attached for the first time on Billesdon's failure-to-accommodate claim.

Further, Wells Fargo's own documents show that WF's ADA Expert interpreted Iannuzzi's statements on November 3, 2021 as a refusal of the requested accommodation and she took that refusal very seriously. The next day she went directly to in-house counsel for a

consultation. [Ex. A, WF-00003911] Minutes later, she emailed Billesdon and told him he needed to have his doctor explore whether any in-office accommodations would be effective. [Ex. A, WF-00003911] Clearly, Billesdon's original WFH Accommodation Request was off the table, as was WF's ADA Expert's unilateral offer of a six-month trial of his WFH Accommodation Request.

Meanwhile, Billesdon's legal team understood Wells Fargo's wordsmithing to be stalling tactic to avoid liability as long as possible. [Ex. H, WF-00003884] Upon learning that Wells Fargo was now pushing for an in-office accommodation (which was never requested by Billesdon) without rendering a decision on Billesdon's requested WFH Accommodation, Billesdon's ADA attorney immediately wrote to WF's ADA Expert and in-house counsel, demanding that it either grant or deny the WFH Accommodation Request in writing by November 12, 2021. Both WF's ADA Expert and in-house counsel completely ignored that demand completely and did not even attempt to meet the November 12, 2021 deadline.[Ex. H, WF-00003884]

### b. Wells Fargo amended an existing RIF to add Billesdon the very day it received Billesdon's medical note confirming an in-office accommodation would not be effective.

Meanwhile, Billesdon worked on getting an opinion from Dr. Midani regarding the effectiveness of any in-office accommodations. [Ex. A, WF-00003904-3905] He had difficulty reaching Dr. Midani who was busy and then on vacation. While waiting on Dr. Midani, Billesdon was seen by his local GP, Dr. Woodward, who provided him with a letter explaining in detail why Billesdon needed a WFH Accommodation. [Ex. A, WF-00003904 and Ex. Y, WF00003886]

Billesdon emailed Dr. Woodward's letter to WF's ADA Expert on December 6, 2021. [Ex. A, WF-00003904 and Ex. Y, WF00003886] **On that same date**, December 6, 2021, Wells Fargo revised an existing and fully approved Business Case for a RIF on someone else to add Billesdon's position to the RIF for the first time. [Ex. O, WF-00004509]

This date marks another point in time where liability attaches for failure to accommodate. Instead of accommodating Billesdon, Wells Fargo added his position to a RIF at the last minute, creating the opportunity to terminate him and claim it was a legitimate business reason.

### c. Billesdon's managers refused WF's own ADA Expert's offer of a three-month, temporary WFH Accommodation.

After reviewing Billesdon's additional medical support essentially stating that no in-office accommodation would be effective, WF's ADA Expert told Billesdon she would try to get his manager's calendar that week or the next. [Ex. A, WF-00003903] She also told him that, for all the open telecommute requests, employees are not expected to return to the office until resolution. [*Id.*] She then got another legal consult with in-house counsel. [Ex. A, WF-00003902]

Two days later, WF's ADA Expert had another meeting with Billesdon's managers, providing them with additional medical support for the WFH Accommodation and this time asking for just a *three-month trial* of WFH. [Ex. A, WF-00003901] Again, this was her personal request; Billesdon's WFH Accommodation request (that had already been denied on November 3, 2021) did not have any time limitations. WF'S ADA Expert expressly told Billesdon's managers that her narrowed request was **based on the advice of counsel**. [*Id.*] At this point, Iannuzzi still tried to get out of accommodating Billesdon, erroneously claiming the decision needed to go to operating-level committee. WF's ADA Expert disabused him of this notion. [*Id.*] WF's ADA Expert emailed Billesdon's managers requesting a response to her three-month accommodation request within three business days. [Ex. A, WF-00003901]

After receiving the email, Iannuzzi copied his manager, Jennifer Doyle, who claimed to have more questions about the three-month WFH accommodation. [Ex. A, WF-00003900] She also claimed she would not even be the decision-maker on the three-month WFH request. [*Id.*] In the call with Doyle, Iannuzzi, and Templeton, WF's ADA Expert made it very clear that the three-month temporary accommodation she was suggesting came *at the advice of counsel who thought it was the best way to "mitigate risk."* In response, Doyle raised regulatory and compliance concerns for the first time but was unable to explain how those were being handled during COVID. WF's ADA Expert told Doyle that Billesdon did not need to return to work while he had an open accommodations case pending and also reminded her that Wells Fargo had a duty to respond the Billesdon's request timely. Nonetheless, Doyle said she wanted to "consult with their compliance partners" to determine what would be "the bigger risk." [*Id.*]

At this point it is clear that even the three-month WFH Accommodation suggested by WF's ADA Expert on the advice of counsel was also rejected by Billesdon's managers. Rather than inform Billesdon of this fact, WF's ADA Expert told him she had "no news yet." [Ex. A, WF-00003900] When Billesdon asked when she anticipates it would be wrapping up, she says "in the next two weeks." [Ex. A, WF-00003899] Again, she did not reveal what she had learned from his managers. This point in time marks another point in time where liability attaches for failure to accommodate.

> **d.    Wells Fargo effectively denied all reasonable accommodations when it determined Billesdon would be terminated using the RIF.**

As it turns out, on December 10, 2021, Doyle escalated the issue to Nancy Lenart, Senior Vice President of HR, to determine what "was the bigger risk." [Ex. A, WF-00003900] Although no attorneys are copied, Wells Fargo redacted the entire email when it produced it during discovery. Lenart turned right around and emailed WF's ADA Expert, but again, Wells Fargo

fully redacted the content of the email even though there is not a communication with counsel. [*Id.*] A few days later, Lenart emailed WF's ADA expert again, but the content is again fully redacted even though no attorneys are shown. [Ex. A, WF-00003899] WF's ADA expert then obtained another legal consult on December 15, but that, too, is redacted. [Ex. A, WF-00003898]

On December 16, 2021, WF's ADA Expert received additional medical documentation from Dr. Midani, specifically answering the questions about effective in-office restroom solutions that essentially preclude the in-office option. [Ex. A, WF-00003898] WF's ADA expert does not acknowledge receipt of this document to Billesdon, but instead immediately gets a legal consult, the content of which is redacted. [*Id.*] She still had not followed up with Billesdon by December 20, 2021, when he had to reach out to her. WF's ADA consult got another legal consult which is redacted, and then told Billesdon she was hoping for a response "by the end of the week." [*Id.*]

At this point, WF's ADA Expert has learned that Billesdon is to be terminated using the RIF. Ex. Z at 130:3-131:10 She confirmed this knowledge during her deposition where she testified that she learned this information from counsel. [Ex. Z, at 287:13-16] Other Wells Fargo employees have likewise testified that, by this date, they knew it was Billesdon who would be terminated under the RIF. [Ex. BB, Doyle Depo. at 240:17-22]

Liability for failure to accommodate attaches again here, when Wells Fargo made the decision to terminate Billesdon in lieu of accommodating him.

**e.    Wells Fargo officially denied all reasonable accommodations when it closed Billesdon's accommodation case.**

On December 29, 2021, WF's ADA Expert obtained another legal consult and then immediately emailed Templeton, in a carefully worded email, asking him to email her the LOB's decision regarding the three-month accommodation "given the latest [return to work] update."

[Ex. A, WF-00003897] Templeton responded in an equally carefully worded email, stating that the LOB would be "delaying making a final decision on this request until a later time" given that Wells Fargo has delayed the return to office indefinitely. [*Id.*]

On December 31, 2021, WF's ADA Expert got another legal consult, but it is redacted. [*Id.*] Two hours later, she emailed Billesdon stating, "in light of recent adjustments to the return to office strategy, and given that employees are now telecommuting indefinitely, the line of business feels the accommodation is being met at this time." [Ex. A, WF-00003896] She then obtained another legal consult, which is redacted. [*Id.*] WF's ADA expert then stated in her notes that she was closing Billesdon's accommodation case, due to the accommodation being met. She did not inform Billesdon she was closing his case. [Ex. A, WF-00003896]

Indeed, Billesdon's ADA advocate and attorney recognized as much, immediately emailing WF's ADA Expert to let her know Wells Fargo was in violation of the ADA and giving her until January 7, 2022 to respond and either grant or deny Billesdon's WFH Accommodation Request *in writing*. [Ex. A, WF-00003896] WF's ADA Expert ignored this email and instead sought out another legal consultation. [*Id.*] When Billesdon asked her if she received the email from his ADA advocate, WF's ADA Expert got several more legal consults. [Ex. A, WF-00003896] She then told Billesdon she was closing his case and he can reopen it if he is required to return to the office. [Ex. A, WF-00003895]

At this point in time, liability for failure to accommodate yet again attaches, Wells Fargo closed Billesdon's accommodation case, effectively denying all accommodation requests. Of course, Wells Fargo does not get to unilaterally decide that Billesdon no longer needed an accommodation simply because it made an adjustment to its return to office strategy that allowed Wells Fargo to suddenly and unilaterally consider Billesdon as "already being accommodated."

This is not how the ADA works and Wells Fargo will be hard-pressed to find any legal support for employing such word games to avoid liability under the ADA.

  **f.**  **Wells Fargo's constructively denied Billesdon's reasonable accommodation through delay.**

  Even if Wells Fargo did not actually or effectively deny Billesdon's accommodation request, it constructively did so due to delay. An "unreasonable delay in providing an accommodation can provide evidence of discrimination" under the ADA. *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000); see also, *Farquhar v. McCarthy*, 814 Fed. Appx. 785, 788 (4th Cir. 2020) (While "employers need not immediately implement or accept accommodations proposed by an employee" and need not move "with maximum speed in addressing a request for accommodations," an "unreasonable delay in providing an accommodation for an employee's known disability can amount to a failure to accommodate.").

  Here, the length of the delay is significant - five months. Billesdon made a formal request for accommodations through an ADA advocate in a certified letter, on August 21, 2021. Despite multiple follow ups by Billesdon and his ADA advocate, Billesdon received no response from anyone at Wells Fargo for two months. Wells Fargo finally opened an accommodation case for Billesdon and assigned him an Accommodation Consultant on October 21, 2021. But that was not the end of the delays; it was just the beginning. Wells Fargo managed to delay another three months before closing Billesdon's case while still avoiding putting a denial in any official writing.

  **g.**  **Wells Fargo also failed to engage in the interactive process in good faith.**

  Implicit in the fourth element of a 'failure-to-accommodate claim (the employer refused to make such accommodations) is the ADA requirement that the employer and employee engage

in an interactive process to identify a reasonable accommodation. *Haneke v. Mid-Atlantic Capital Mgmt.* 131 Fed. Appx. 399, *3-4 (4th Cir. 2005), citing 29 C.F.R. § 1630.2(o)(3).

All the foregoing facts also show that Wells Fargo failed to accommodate Billesdon by failing to engage in the interactive process in good faith.

**C.    Wells Fargo admits it has no evidence to prove the requested accommodation would cause an undue hardship.**

Wells Fargo has no chance of meeting its burden of showing undue hardship. First, Davis and others involved in the decision to deny the accommodation have all testified that no undue hardship was ever identified. [[Ex. Z, at 101:4-10; 214:7-18; see also Ex. AA at 236:20-25].

Second, during discovery, Wells Fargo was asked whether it contended that Billesdon's request for accommodation imposed an undue hardship and to state with particularly all facts supporting the contention. [Ex. X, Wells Fargo's Supplemental Responses to Interrogatories] Wells Fargo responded, "Defendant did not reach a conclusion or form an opinion as to whether Plaintiff's request to work from home permanently created an undue hardship or not reasonable." It also responded, "Because of this delay to return to in-office work, and the decision to allow Plaintiff to continue working from home until such time as he was required to return to the office, Defendant did not reach a conclusion or form an opinion as to whether Plaintiff's request to work from home permanently created an undue hardship." [Ex. X, Response to Interrogatory No. 14]  As such, Wells Fargo has already conceded it has no facts to support a contention that Billesdon's requested accommodation caused an undue hardship.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff Christopher Billesdon respectfully requests this Court grant his partial summary judgment on the issue of liability for failure to accommodate under Counts I.

Respectfully submitted this 19th day of January 2024.

/s/ L. Michelle Gessner
L. Michelle Gessner, NCSB#26590
GESSNERLAW, PLLC
602 East Morehead Street
Charlotte, North Carolina 28202
Tel: (704) 234-7442; Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com

*Attorney for Plaintiff*

**CERTIFICATE OF LENGTH**

I certify that this brief was prepared using Microsoft Word, which reports that it contains a total of 5923 words, inclusive of the caption, headings, signature and this certificate.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: January 19, 2024                    */s/ L. Michelle Gessner*
                                           L. Michelle Gessner, NCSB#26590
                                           GESSNERLAW, PLLC
                                           602 East Morehead Street
                                           Charlotte, North Carolina 28202
                                           Tel: (704) 234-7442; Fax: (980) 206-0286
                                           Email: michelle@mgessnerlaw.com

                                           *Attorney for Plaintiff*