IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:23-cv-160-FDW

| | |
|---|---|
| CHRISTOPHER JOHN BILLESDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WELLS FARGO SECURITIES, LLC, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.      Bottom Line Up Front**

Defendant Wells Fargo Securities, LLC, accommodated Plaintiff Christopher Billesdon's complex medical condition the entire time he was employed—more than twenty years. When Billesdon requested to work from home on a permanent, fulltime basis in August 2021, even though there was no indication his long-standing medical condition had changed, Wells Fargo engaged in an extensive interactive process to identify and provide a reasonable accommodation. Wells Fargo provided Billesdon his requested accommodation—working from home—throughout that time and through the end of his employment. After the return-to-office date was pushed back indefinitely, Wells Fargo paused the accommodation process and requested Billesdon renew his request for a future accommodation closer to the yet-to-be-determined new return-to-office date.

The undisputed facts show that Wells Fargo engaged in an extensive interactive process with Billesdon, accommodated him throughout that process, and never denied a reasonable accommodation. Accordingly, the Court should deny Billesdon's motion for partial summary judgment. Indeed, for the reasons stated below and in Wells Fargo's own motion for summary

judgment, the Court should grant summary judgment to Wells Fargo on the reasonable accommodation claim.

**II.     Statement of Facts In Rubuttal To Plaintiff's Statement of Alleged Undisputed Facts**

In August 2021, Billesdon requested an accommodation to work from home permanently due to his medical condition related to a neurogenic bladder and colon. (ECF 56 Exhibit A, Doyle Decl. ¶9; Exhibit B, Iannuzzi Decl. ¶10.) Billesdon's request was to work from home in the future, following a return-to-work mandate that was, at the time of his request, set for January 10, 2022. (Doyle Decl. at ¶13; Iannuzzi Decl. at ¶16.) Following this request, Billesdon's managers, Jennifer Doyle and Chris Iannuzzi, engaged with Billesdon, through Wells Fargo's ADA accommodations consultant, Joanne Rusnak Davis. (ECF 56-10, Exhibit D, Davis Dep. 100:15-21.) Davis was responsible for working with the managers to facilitate Billesdon's request and to work through the interactive process. (Iannuzzi Decl. ¶¶10, 13, 14; Davis Dep. 11:17-18;14:3-13;42:11-14.) While Davis certainly has "expertise" in the realm of accommodation requests through her education and work history, Davis does not hold herself out to be a legal "expert" as Plaintiff attempts to claim. (ECF 59-27, Exhibit Z, Davis Dep. 24:8-16.) Neither party has identified Davis as an expert witness.

Contrary to Plaintiff's contentions in his Memorandum,[1] Wells Fargo's managers and ADA accommodations consultant worked intently on determining if Billesdon's request to work from home could be accommodated. This involved inquiring about and discussing Billesdon's business travel requirements and limitations. (Iannuzzi Decl. ¶¶10, 12, 14; ECF 56-10, Exhibit D,

---

[1] Wells Fargo objects to consideration of Billesdon's "timeline of undisputed facts" (ECF 59-1) as inadmissible hearsay under Rule 802 and as an inappropriate summary under Rule 1006, as the descriptions are not facts or factual summaries but counsel's opinion and biased interpretation regarding alleged facts in the underlying cited documents.

Davis Dep. 81:3-6.) Billesdon's managers and Davis conferenced several times to discuss Billesdon's accommodation request and to explore ways in which he could be accommodated, including by allowing him to work within the office at three separate workstations, two of which were closer to the bathroom than the one on the trading floor with Billesdon's teammates. (Iannuzzi Decl. ¶15; Doyle Decl. ¶9.)

Wells Fargo offered the additional workstations as reasonable accommodations based on Doyle's and Iannuzzi's interactions with Billesdon over the many years they knew each other. (Iannuzzi Decl. ¶12; Doyle Decl. ¶5.) Billesdon had worked alongside Doyle in the Charlotte office prior to his relocation to the El Segundo office, and Doyle was generally aware that he took medication for his condition and needed to be near a bathroom at certain times. (Doyle Decl. ¶5.) Similarly, Iannuzzi and Billesdon had been colleagues for many years and had socialized together both inside and outside the office. (Iannuzzi Decl. ¶12.) Based on their reasonable understanding of Billesdon's condition, Iannuzzi and Doyle suggested that Billesdon be offered two additional workstations, both closer to the bathroom. (Iannuzzi Decl. ¶15.) One was a workstation in the lower right quadrant of the trading floor that was closer to the bathrooms. (Doyle Decl. ¶9.) The other was a private office stationed directly across the hall from a multiple-stall men's bathroom. (*Id.*) This bathroom was only a few feet from the entrance of the private office. (*Id.*) Upon retuning to the office in January 2022 (when return-to-work went into effect) Billesdon would have been permitted to use any or all of these spaces. (Iannuzzi Decl. ¶15.)

These workstations were not considered without thought for Billesdon's accommodation request. Instead, they were suggested because Doyle and Iannuzzi believed they could adequately accommodate Billesdon, based on their many years of knowing Billesdon and their understanding of his condition. (Doyle Decl. ¶9.) Offering these additional workstations closer to the bathroom

3

also appeared reasonable because Billesdon had previously worked in Wells Fargo's El Segundo office. (Iannuzzi Decl. ¶15; ECF 56-9, Exhibit C, Billesdon Dep. 58:5-6.) There, the bathrooms were located approximately 30 feet away from Billesdon's workstation, which was further to the bathroom than the distance between the private office offered to Billesdon in Charlotte and the bathroom across the hall. (*Id.*) In essence, the accommodation offered to Billesdon in Charlotte was an *improvement* in terms of distance from his prior office, which is why it was logically viewed as a reasonable offering. (*Id.*) Based on this understanding, Davis then requested additional medical support from Billesdon's physicians in order to assess if the in-office accommodations suggested by Doyle and Iannuzzi were feasible. (Iannuzzi Decl. ¶15.)

As part of the interactive process, Doyle also inquired whether Billesdon's request to work from home permanently would run counter to Financial Industry Regulatory Authority ("FINRA") regulations. (Doyle Decl. ¶¶11-12.) Accordingly, Doyle reached out to Wells Fargo compliance manager Jennifer DeRochi to discuss whether Billesdon's request to work from home was permissible under FINRA requirements and to learn whether these regulations were subject to change during the pandemic. (*Id.*)

During this interactive process and prior to any decision being made regarding Billesdon's accommodation request, Wells Fargo's return-to-work dates changed, and no employees, including Billesdon, were required to return to the office on January 10, 2022. (Iannuzzi Decl. ¶16; Doyle Decl. ¶13; ECF 56-10, Exhibit D, Davis Dep. 52:24-53:3.) When this announcement was made on December 21, 2021, Wells Fargo communicated to Billesdon that he was not required to return to the office on January 10 since no employees were being required to do so. (ECF 56-10, Exhibit D, Davis Dep. 53:23-24; 31:15.) Throughout the interactive process, Billesdon continued to work from home and was never required to come into the office during the pendency of his

4

accommodation request. (Iannuzzi Decl. ¶18; Doyle Decl. ¶21.) In fact, at no time was Billesdon required to return to the office prior to his displacement, and he received the accommodation he requested throughout the duration of his employment. (*Id.*)

Billesdon's placement within a Reduction in Force ("RIF") was for legitimate business reasons, and Billesdon cites no evidence in his Memorandum that can show discrimination under the ADA, nor does he move for summary judgment on any claim related to the RIF.

III. <u>Argument</u>

"In order for a plaintiff to establish a prima facie case against his employer for failure to accommodate under the ADA, the plaintiff must show: " (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position ...; and (4) that the [employer] refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (quotation marks omitted). Not only does Billesdon fail to establish the fourth element, but the evidence before the Court compels dismissal of his claim on that ground.

    A.    **Wells Fargo accommodated Billesdon at all times.**

Billesdon's reasonable accommodation claim fails at the outset because Wells Fargo always accommodated his medical condition during his employment: he continued to work from home through the date of his separation from employment and was never required to come back to work in the office.

"The speculative possibility of being denied an accommodation in the future is not enough to sustain a failure-to-accommodate claim." *Alston v. Holy Cross Health, Inc.*, Civ. No. DLB-20-2388, 2023 WL 2743332, *10 (D. Md. Mar. 31, 2023) (citing *Kelly v. Town of Abingdon*, 558 F.

5

Supp. 3d 289, 305 (W.D. Va. 2021); *Jones v. UnitedHealth Grp., Inc.*, 802 Fed. Appx. 780, 782 (4th Cir. 2020) (unpublished)).[2] In *Alston*, the plaintiff was a respiratory therapist who had a kidney transplant and subsequently sought an accommodation of not being required to attend to patients in "negative pressure isolation rooms." 2023 WL 2743332 at *1; *id.* at *1 n.1. His accommodation was allowed, but his employer allegedly changed its policy and required all respiratory therapists to be able to treat all patients, regardless of whether the patient was in a negative pressure isolation room. *Id.* at *4. "Alston viewed this change as a withdrawal of an accommodation[.]" *Id.* After being terminated for insubordination, Alston sued and raised various claims including failure to accommodate under the ADA. In granting the employer's motion for summary judgment, the district court noted that Alston could not meet two of the elements of his prima facie claim, including the fourth (that the employer actually refused the accommodation). *Id.* at *10. The court held that the employer's change in policy "cannot be considered a failure to accommodate" because "importantly, Alston was never forced to work in [a] negative pressure isolation room

---

[2] In *Kelly v. Town of Abingdon*, Kelly became the Town Manager and later was diagnosed with high blood pressure. 558 F. Supp. 3d at 292, 295. He also experienced panic attacks and anxiety. *Id.* at 298. Through an attorney, Kelly allegedly requested accommodations in the form of "short breaks and walks." *Id.* at 305. In response to Kelly's failure to accommodate claim, the Town claimed that Kelly could not meet the fourth element of his prima facie claim because "it never denied Kelly the accommodations he says he requested[.]" *Id.* The court agreed and noted it was "undisputed that Kelly did in fact take walks and breaks" even though he was allegedly criticized for doing so. *Id.*

*Jones v. UnitedHealth Group, Inc.* involved an employee's appeal of the district court's grant of summary judgment to the employer on claims arising under Title VII of the Civil Rights Act of 1964. 802 Fed. Appx. at 781-82. Jones reported that a co-worker had harassed her. Thereafter, her employer agreed she would no longer have to work with the alleged harasser. *Id.* at 781. After she filed an unrelated charge of discrimination, Jones alleged the employer retaliated by reneging on the agreement and telling her she *might* have to work with the alleged harasser "in the future, should business needs require it." *Id.* at 781-82. In rejecting her appeal, the court noted that Jones was never actually required to work with the alleged harasser after she filed her discrimination claim. *Id.* at 783.

after the policy change. In other words, he was never actually refused an accommodation." *Id.* Based on this observation, the court held that "no reasonable jury could conclude that [the employer] denied Alston a reasonable accommodation." *Id.*

Here, in August 2021 (while working remotely due to the pandemic), Billesdon "made a formal request to work from home ***after*** the COVID restrictions were lifted[.]" (ECF 58 at 3 (emphasis added); Doyle Decl. ¶ 8.) When he made his request, it was anticipated that Wells Fargo employees would be required to return to the office on January 10, 2022. (Doyle Decl. ¶13.) However, in late-December 2021, Wells Fargo announced that employees would *not* have to return to the office the following month due to ongoing pandemic concerns. (*Id.*) Employees (including Billesdon) continued working from home until a new date was announced.[3] (*Id.*; Iannuzzi Decl. ¶16.)

It is undisputed that Billesdon was allowed to work from home and was never required to return to the office at any time between the date he made his request for accommodation in August 2021 and when he was displaced in February 2022 under the RIF. (Iannuzzi Decl. ¶18). Thus, even if Wells Fargo had rejected Billesdon's requested accommodation of permanently working from home after the return-to-office policy was to take effect, Billesdon was displaced prior to that decision taking effect. "In other words, [Billesdon] was never actually refused an accommodation," and he cannot satisfy the fourth element of his prima facie case. *Alston*, 2023

---

[3] On December 31, 2021, Billesdon was informed that in light of the recent adjustment to the return-to-office date and given that all employees were continuing to work from home indefinitely, his accommodation request was being met. *See Tartaro-McGowan v. Inova Home Health, LLC*, --- F.4th ---, 2024 WL 174357, at *9 (4th Cir. Jan. 17, 2024) ("[A]n accommodation is not ineffective simply because it is available to other employees regardless of disability status.") (citing *Yochim v. Carson*, 935 F.3d 586, 592 (7th Cir. 2019)). Billesdon was instructed to open a new accommodation request if and when there was a definitive return-to-office date. (*See* ECF 56-10 (Davis Dep. 31:15; 53:23-24).)

7

WL 2743332 at *10.

### B. Wells Fargo never denied Billesdon's accommodation request.

#### 1. <u>Billesdon misconstrues the facts.</u>

Wells Fargo never denied Billesdon's request to work from home on a permanent, fulltime basis. Specifically, on or about December 21, 2021 Wells Fargo announced that workers—including Billesdon—would not be required to come back to the office on January 10, 2022, as originally planned, due to ongoing pandemic concerns. (Iannuzzi Decl. ¶16; Doyle Decl. ¶13; Davis Dep. 52:24-53:3.) At the time, Wells Fargo did not issue a new date that employees were required to return to the office; thus, employees were permitted to work from home open-endedly until a new date was announced. (*Id.*) On December 31, 2021, Davis informed Billesdon that in light of the recent adjustments to the return to office strategy, and given that all employees were continuing to telecommute indefinitely, his accommodation request was being met. Billesdon was instructed to open a new accommodation request if/when there was a definitive return to office date. (Davis Dep. 53:23-24; 31:15; *see also* ECF 59-2 at 4 (John Templeton telling Davis that the final decision on the request is being delayed because the return-to-office mandate was delayed indefinitely and Billesdon "can continue to work from home").)

Billesdon does not dispute these facts. He simply mischaracterizes them, claiming that they constitute a de facto denial. Billeson's errant conclusion is based solely upon his speculation that Wells Fargo would have denied his request to work from home permanently and on a fulltime basis had Billesdon ever actually been otherwise required to return to the office. Because the Court adjudicates summary judgments based on admissible facts before the Court, and not inadmissible, rank speculation, Billesdon's claim that Wells Fargo denied his request for accommodation is not supported.

2. <u>There was no unreasonable delay.</u>

In addition, Billesdon argues that his request for accommodation was "constructively denied" through delay. (ECF 58 at 19.) This argument lacks any basis in fact or law.

First, factually, Billesdon only requested an accommodation for when Wells Fargo mandated its employees to return to the office. That did not occur from the date of Billesdon's request in August 2021 through the date of his separation from employment in February 2022, and Billesdon continued to work from home the entire time. In other words, Billesdon was receiving his exact requested accommodation throughout, so any complaint of delay was harmless, and Wells Fargo certainly did not "constructively deny" an accommodation he was, in fact, receiving.

Even if any facts did support his "delay" argument, Billesdon's cited case law does not. The sole Fourth Circuit case he cites—*Farquhar v. McCarthy*, 814 F. App'x 786 (Aug. 7, 2020)—is an unpublished, per curiam opinion that not only failed to identify the underlying facts but also affirmed the district court's decision granting summary judgment to the employer. Wells Fargo is not aware of any binding case law finding that a delay in responding to a request for an accommodation in the future—and where the employee was fully accommodated during the interactive process—constituted a failure to provide a reasonable accommodation. Rather, "[t]he speculative possibility of being denied an accommodation in the future is not enough to sustain a failure-to-accommodate claim." *Alston*, 2023 WL 2743332, *10. Put another way, if an employee desires an accommodation to begin in six months, the employer does not violate the ADA by telling the employee to come back to it in four or five months and resume discussion closer to the date the accommodation may be needed. There was no unreasonable delay in this case that supports Billesdon's claim.

3. <u>Separation from employment is not a denial of an accommodation request.</u>

9

Case 3:23-cv-00160-FDW-SCR   Document 61   Filed 02/02/24   Page 9 of 19

Billesdon argues, without citing any legal authority, that his displacement from employment pursuant to a reduction in force constituted a denial of request for an accommodation. This argument is nonsensical. An employer can end employment of an at-will employee for any lawful reason. Separating an employee from employment pursuant to a RIF—or for willful misconduct or performance reasons—does not constitute denial of an accommodation request that supports a failure to accommodate claim. Wells Fargo is not aware of any legal precedent for Billesdon's position.

### C. Billesdon's work-from-home request is not medically supported through admissible evidence.

Even assuming Billesdon could prove that Wells Fargo denied his permanent work-from-home request—which he cannot—Billesdon's claim still fails because he cannot prove working from home on a fulltime, permanent basis was necessary.

Billesdon admits his medical condition is "complex" and "complicated." (ECF 58 at 2 ("The complications from Billesdon's complex medical conditions are profound and the ongoing ordeal . . . would be incomprehensible to most people."), 9.) As such, Billesdon was required to provide expert medical opinion evidence that his requested accommodation was medically necessary. *See, e.g.*, *Kande v. Dimensions Health Corp.*, No. GJH-18-2306, 2020 WL 7054771, *8 (D. Md., Dec. 2, 2020) (citation omitted); *Stern v. Univ. of Osteopathic Med. Hth. Sci.*, 220 F.3d 906, 908-9 (8th Cir. 2000) (discussing that dyslexia would require the fact finder to speculate as to whether the accommodation was necessary or related to the condition and that an expert would be needed to establish the causation between the accommodation and the disability); *Roop v. Desousa*, 660 F. Supp. 3d 477, 485 (E.D. Va. 2023) (citing *Fitzgerald v. Manning*, 679 F.2d 341, 350 (4th Cir. 1982)). Billesdon, however, has neither disclosed any medical experts, retained or unretained, in discovery nor has he even identified any of medical providers as fact witnesses.

Accordingly, because Billesdon has presented no admissible medical evidence supporting his preferred accommodation of working from home, he cannot establish his reasonable accommodation claim.

Billesdon's attempts to circumvent his failures of proof are unavailing. Specifically, Billesdon cites the testimony of Wells Fargo's ADA Accommodations Consultant, Joanne Rusnak Davis, for the proposition that permanent remote work was medically necessary. (ECF 58 at 11.) This evidence is insufficient, and inadmissible, for several reasons.

First, despite Billesdon's colloquial description of Davis as Wells Fargo's "ADA Expert" throughout his summary judgment brief, neither party has designated Davis as an expert medical opinion witness. Nor is she qualified to render any medical opinion testimony because she is not a physician and has no medical educational background. (ECF 58-27, Exhibit Z, Davis Dep. at 23:16-25.) That Wells Fargo's former Senior Vice President of Human Resources, Nancy Lenart, testified "the accommodations team [including Davis] is the expert within Wells Fargo who manage cases with managers[,]" does not transform Davis into an "expert" for purposes of FRE 702. (ECF 59-28 at 8 (N. Lenart Dep. 75:16-17).)

Further, Billesdon improperly relies on an internal note keeping system maintained by Davis during the course of the interactive process to argue that the accommodation was medically necessary. (ECF 58 at 11; ECF 59-2 at 25.) These notes establish no such thing. The entry on WF-00003918 is an internal email from Davis to John Templeton that states, "I have received medical verification to support the request." While this may show that Wells Fargo had receipt of medical documentation regarding Billesdon's medical condition and accommodation request, the medical documentation itself is hearsay not subject to any recognized exception. Simply because a doctor's letter appears in Wells Fargo's file does not mean the letter is a "business record" of Wells Fargo

11

under Federal Rule of Evidence 803(6).[4] *See, e.g.*, *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 194-95 (4th Cir. 2003) (holding that a letter prepared by a customer, forwarded to the party's general counsel, and maintained in the company's file was inadmissible hearsay not subject to the business record exception); *Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1090 (5th Cir. 1988) ("The proponent of a document offered under the business record exception must show that the document was prepared in the regular course of its *author's* business.") (emphasis in original). Because the alleged medical documentation is hearsay, it cannot be considered at the summary judgment stage. *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 704 (4th Cir. 2023) ("Courts in the Fourth Circuit may not consider inadmissible hearsay evidence on a motion for summary judgment.").

Similarly, Davis's deposition testimony fails to establish the medical necessity of Billesdon's accommodation request. It only establishes that Billesdon provided documentation to Wells Fargo during the interactive process. (*See* ECF 59-27, Exhibit Z at 17:18-18:18.) Davis simply confirms that she informed Billesdon's managers that she had received medical documentation for Billesdon's request for accommodation. The testimony does not establish that Billesdon's requested accommodation was medically necessary. Over objection of defense counsel (because the question was seeking expert opinion testimony), Plaintiff's counsel asked Davis if she considers herself "somewhat of an expert" on the ADA. (*Id.* at 24:8-9.) In response, Davis stated she has a "strong knowledge of the ADA" but did not concede she is an "expert." (*Id.* at 24:11.) Later, Davis agreed only that she has "expertise" through her many years in working on accommodation requests. (*Id.* at 24:12-16.) Again, Davis's statements fail to establish that Billesdon's requested accommodation to permanently work from home was medically necessary. Furthermore, even if Davis had testified the request was medically necessary, Davis is not a

---

[4] (*See* ECF 59-26, Ex. Y.)

medical expert and her comments in this regard would be inadmissible opinion testimony of a lay witness. *See* Fed. R. Evid. 701 (allowing opinion testimony of lay witness if three conditions are met, including that the testimony is "*not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702) (emphasis added).

> **D.  Even if Billesdon's preferred accommodation was medically supported, Wells Fargo had discretion to pick another reasonable accommodation.**

Under the ADA, "the range of reasonable accommodations is broad." *Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1011 (4th Cir. 2020). "To the extent an employee may be accommodated through a variety of measures, the employer, exercising sound judgment, possesses ultimate discretion over these alternatives." *Id.* (quotation marks omitted). "Provided the employer's choice of accommodation is 'reasonable,' . . . not even a well-intentioned court may substitute its own judgment for the employer's choice." *Id.* at 1011-12. *See Smith v. CSRA*, 12 F.4th 396, 414-15 (4th Cir. 2021) (affirming summary judgment for employer where employee with limited mobility requested remote work but employer provided on-site parking pass that allowed her to park close to the building, and holding "an employer is not required to provide 'the exact accommodation that the employee requested,' and in the alternative may provide 'an alternate reasonable accommodation' at its discretion") (quoting *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415 (4th Cir. 2015)); *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 433 (4th Cir. 2015) (the ADA "requires a 'reasonable' accommodation, not a perfect one").

Here, it is not disputed that Billesdon's medical condition existed the entire time he worked for Wells Fargo and its predecessors, a period of more than twenty years. (Doyle Decl. ¶5; Iannuzzi Decl. ¶12). Billeson has submitted no evidence to the Court, however, that his medical condition materially worsened during this time such that new accommodations were needed. Rather, it is undisputed that Billesdon was able to perform his job at Wells Fargo for decades while working

13

from the office with nearby bathroom access. (*Id.*; Billesdon Dep. 58:1-6.) During this time, and even if his work-from-home request had been ultimately approved, Billesdon was able to travel extensively and attend social events for his position. (Iannuzzi Decl. ¶12, 14.)

Further, and critically, Billesdon has admitted that he did not need to work from home in his Complaint. Specifically, Billesdon alleges that Wells Fargo "violated the ADA by failing to attempt to reasonably accommodate Plaintiff . . . [by not] allowing Plaintiff to work from home ***and/or not allowing Plaintiff to come into the office at or around noon on the days when he was taking his medications*** . . . ." (ECF 1 at ¶71 (emphasis added).)[5] *See also* Fed. R. Evid. 801(d)(1)(B); *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 365 (4th Cir. 2022) (holding that "a party is bound by the admissions of his pleadings") (cleaned up) (quoting *Butts v. Prince William Ctny. Scho. Bd.*, 844 F.3d 424, 432 n.3 (4th Cir. 2016)). At his deposition, Billesdon admitted that he only took his medications on certain days per week, (Billesdon Dep. 49:22-25 157:4, attached as **Exhibit A**; ECF 56-9 at 58:20-22), meaning he would have been able to work in the office the other days.

Given this background, including both Billesdon's binding admission that he could work in the office at times, and a record of twenty years of being able to do so, Wells Fargo's suggested accommodation of providing Billesdon with three workstations, including one just feet from a bathroom, was eminently reasonable. (Doyle Decl. ¶9; Iannuzzi Decl. ¶15.) Under this precedent, Wells Fargo had clear authority to choose its reasonable accommodation over Billesdon's preferred accommodation. *Elledge*, 979 F.3d at 1011; *Smith*, 12 F.4th at 414-15. Plaintiff simply

---

[5] Billesdon never made this request—to work from home on certain workdays as an alternative accommodation—while he was employed. His failure to provide this as an option during the months' long interactive process that Wells Fargo engaged in fatally undermines his argument that it was Wells Fargo, and not he, who failed to engage in the interactive process in good faith.

14

did not receive his preferred accommodation, which is not actionable under the ADA.

    **E.**    **Billesdon's arguments that Well Fargo did not engage in the interactive process in good faith fail.**

        1. <u>An alleged failure to engage in the interactive process is not a *per se* failure to provide a reasonable accommodation</u>.

As an initial matter, Billesdon misapplies the law. Billesdon argues that "[i]mplicit in the fourth element of a failure-to-accommodate claim (the employer refused to make such accommodations) is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." (ECF 58 at 19-20 (citing *Haneke v. Mid-Atlantic Capital Mgmt.*, 131 Fed. Appx. 399, 400 (4th Cir. 2005) (unpublished)).[6] In other words, he argues "Wells Fargo failed to accommodate Billesdon *by* failing to engage in the interactive process in good faith." (ECF 58 at 20 (emphasis added).) Simply put, this is not the law.

*Haneke*—the sole authority Billesdon cites—is an unpublished *per curiam* decision that spans just over one page and contains very little analysis. Only two published Fourth Circuit cases have cited *Haneke*, but neither case cites it for the proposition Billesdon advances: that the failure to engage in the interactive process is *ipso facto* a failure to accommodate.

The first case is *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454 (4th Cir. 2012). *Halpern* involved allegations that Wake Forest dismissed the plaintiff from medical school in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title III of the ADA, 42 U.S.C. § 12181 *et seq*. The district court granted summary judgment to Wake Forest on all claims and the plaintiff appealed. *Id.* Halpern advanced several arguments that were all rejected, including his

---

[6] The full quote from *Haneke* states: "Implicit in the fourth element [of a plaintiff's prima facie case] is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." 131 F. App'x at 400.

argument that "even if his proposed accommodation was unreasonable, Wake Forest violated the ADA by failing to engage in an 'interactive process to identify a reasonable accommodation.'" *Id.* at 466 (citing *Haneke* at 400). The Fourth Circuit noted that "[a]n interactive effort to identify an accommodation would not have corrected the untimeliness of Halpern's request or erased his record of prior misconduct. *Id.* Thus, the citation to *Haneke* appears to have been taken from Halpern's brief and it was rejected by the court. Also, unlike Title I of the ADA (under which Billesdon sued), Title III of the ADA (under which Halpern sued) does *not* contain a requirement that the parties engage in an interactive process. *See Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959, 964 (9th Cir. 2019) ("The ADA does not make this 'interactive process' requirement applicable to public accommodations and services. *See* Title III of the ADA, 42 U.S.C. §§ 12181-12189."). *Halpern* does not, in any way, rely upon or adopt the quote from *Haneke* upon which Billesdon relies.

The other published Fourth Circuit case that cites *Haneke* is *Wilson*. 717 F.3d 337. The full quote states: "With respect to the fourth element of Wilson's prima facie case – that Dollar General refused to provide a reasonable accommodation – Wilson argues Dollar General failed to engage in an interactive process to identify a reasonable accommodation. *See Haneke[]*, 131 Fed. Appx. [at 400]." 717 F.3d at 346. The *Wilson* court did not engage in any analysis of *Haneke*, and after a discussion of when the duty to engage in the interactive process is triggered, the Fourth Circuit stated (as cited above), "But the interactive process 'is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of that position sought.'" 717 F.3d at 347 (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000)).

In sum, Plaintiff's excised quote from *Haneke* is not the law and it does not support

Plaintiff's argument that an alleged failure to engage in the interactive process constitutes a *per se* failure to accommodate under Title I of the ADA.

    2. <u>An alleged failure to engage in the interactive process is not a standalone claim.</u>

  Billesdon further argues that Wells Fargo is liable under the ADA for its alleged failure to engage in the interactive process. While most of Billesdon's argument is in the context of discussing the fourth element of his failure to accommodate claim, (*see* ECF 58 at 19-20), Billesdon alleges the interactive process claim as a separate claim in his Complaint and alludes to it as a separate claim in the introductory section of his summary judgment brief. (ECF 58 at 1 ("no rational jury could possibly find in Wells Fargo's favor on Billesdon's claim for failure to accommodate ***and failure to engage in the interactive process in good faith***." (emphasis added). As set forth in Wells Fargo's own summary judgment brief, however, a claim for failure to engage in the interactive process is not a standalone claim under Fourth Circuit precedent. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013) ("But the interactive process 'is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of that position sought.'") (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000)); *see also Hoelzer v. Bd. of Governors of the Univ. of N.C.,* No. 1:20-cv-1072, 2022 WL 973069, at *8 (M.D.N.C. Mar. 31, 2022) (citing *Wilson* and dismissing stand-alone claim).

    3. <u>Wells Fargo engaged in the interactive process in good faith.</u>

  Even if Billesdon analyzed the law correctly, his claim would still fail on the facts. There is substantial evidence that Wells Fargo engaged in the interactive process in good faith. Billesdon's managers, Chris Iannuzzi and Jennifer Doyle, worked directly with Wells Fargo's internal ADA Accommodations Consultant, Joanne Rusnak Davis, to learn about Billesdon's

17

Case 3:23-cv-00160-FDW-SCR   Document 61   Filed 02/02/24   Page 17 of 19

request for accommodation. (Doyle Decl. at ¶9; Iannuzzi Decl. at ¶¶13-15.) Iannuzzi inquired about whether or not Plaintiff would need an accommodation regarding the travel requirements of his position. (Iannuzzi Decl. at ¶¶8, 14.) Doyle and Iannuzzi considered options for an in-office accommodation, including by offering Plaintiff an additional workstation closer to the bathroom and a private office that was steps away. (Doyle Decl. at ¶9; Iannuzzi Decl. at ¶15.) Doyle also researched federal compliance requirements that affected whether or not Plaintiff's request to work from home was permissible. (Doyle Decl. at ¶¶11-12.) Throughout this time, Davis communicated often with Plaintiff to keep him updated on his request. (ECF 58, Exhibit. Z, Davis Dep. at 62:4-63:6; 53:19-54:5.) Additionally, Davis confirmed in her deposition that the managers where still in the process of determining how they were going to "move forward" and determining how they were going to accommodate Plaintiff. (*Id.* at 18:10-17.)

## IV. Conclusion

For the reasons set forth above, Wells Fargo respectfully requests that the Court deny Plaintiff's motion for partial summary judgment in full.

This the 2nd day of February, 2024.

                                              Respectfully submitted,

By: */s/ David I. Klass*
     David I. Klass (NC Bar No. 53342)
     Lucy M. Anderson (NC Bar No. 49043)
     **FISHER PHILLIPS LLP**
     227 West Trade Street, Suite 2020
     Charlotte, North Carolina 28202
     Telephone: (704) 334-4565
     Facsimile: (704) 334-9774
     dklass@fisherphillips.com
     lmanderson@fisherphillips.com
     *COUNSEL FOR DEFENDANT*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:23-cv-160-FDW

| | |
|---|---|
| CHRISTOPHER JOHN BILLESDON, | ) |
| Plaintiff, | ) |
| v. | ) |
| WELLS FARGO SECURITIES, LLC, | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date listed below, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send electronic notice to Plaintiff's counsel:

L. Michelle Gessner, Esq.
Gessner Law, PLLC
602 East Morehead Street
Charlotte, NC 28202
michelle@mgessnerlaw.com

## CERTIFICATE OF WORD COUNT COMPLIANCE

The undersigned hereby certifies that this memorandum of law in opposition to Plaintiff's motion for partial summary judgment does not exceed 6,000 words, as set forth in the Case Management Order. (ECF 9 at 6-7.)

This the 2nd day of February, 2024.

Respectfully submitted,

By: */s/ David I. Klass*
David I. Klass
**FISHER PHILLIPS LLP**