UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00160-FDW-SCR

| CHRISTOPHER JOHN BILLESDON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| WELLS FARGO SECURITIES, LLC, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment, (Doc. No. 55), and Plaintiff's Motion for Partial Summary Judgment, (Doc. No. 57). These matters have been fully briefed, (Doc. Nos. 55, 56, 57, 58, 59, 61, 62, 63, 64, 65), and are ripe for ruling. For the reasons set forth below, Defendant's Motion is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion is DENIED.

### I. BACKGROUND[1]

In 1990, Plaintiff Christopher Billesdon ("Plaintiff") was injured after falling from a balcony which resulted in a fractured spine and significant nerve damage leading to permanent paralysis of his colon and bladder. (Doc. No. 1, p. 4.) This requires Plaintiff to use a combination of laxatives "to counteract his colon/bladder paralysis and facilitate the production of bowel movement." (Id.) Though the medication often causes bloating and cramping, it effectively creates bowel movements every two to three hours. (Doc. No. 1, p. 5.)

Since 1997, Plaintiff was employed by Defendant Wells Fargo ("Defendant") and its predecessors. (Doc. No. 57, p. 3.) While employed in Defendant's California offices, Plaintiff took

---

[1] The background set forth herein is taken from a combination of the parties' briefing and attached exhibits. The background is taken in the light most favorable to Plaintiff as the nonmoving party.

1

his first dosage of medication at home, arrived to work by 4:45 a.m., then took his second dosage of medication upon arriving at work. (Doc. No. 1, p. 5.) Because the office Plaintiff worked from had only approximately fifteen employees, the two-stall bathroom located roughly ten seconds from Plaintiff's work area accommodated his medical condition for nearly twelve years. (Doc. No. 1, p. 5–6.)

During the global pandemic in 2020, Plaintiff—then a Senior Sales Securities Manager—relocated from Defendant's Los Angeles office to its Charlotte office. (Doc. No. 1, p. 6.) Though working remote due to the pandemic, Plaintiff was familiar with Defendant's trading floor from which he would be expected to work and foresaw issues with his ability to access a bathroom. (Id.) On August 31, 2021, through an Americans with Disabilities Act ("ADA") Advocate and law firm, Plaintiff formally requested a work from home accommodation to be able to continue working remotely after COVID restrictions lifted. (Doc. No. 59-3, p. 2–5.) As part of the request, Plaintiff provided a letter from his physician documenting his medical needs. (Id.)

On October 21, 2021, Defendant assigned Plaintiff an ADA Accommodations Consultant, Joanne Davis ("Davis"), to work with Plaintiff's managers to facilitate the request. (Doc. No. 56-4, p. 3.) Davis contacted Plaintiff's manager, Jon Templeton ("Templeton"), to explain Plaintiff's requested accommodation. (Doc. No. 59-2, p. 23.) Templeton requested that his manager, Chris Iannuzzi ("Iannuzzi"), be included in a meeting with Davis. (Id.) Davis met with both Templeton and Iannuzzi on two occasions to discuss questions they had regarding Plaintiff's accommodation request, including how the accommodation would affect Plaintiff's ability to travel for work. (Id.) At the request of Templeton and Iannuzzi, Davis clarified with Plaintiff that travel would not be affected as he is able to "self-mitigate" his bathroom needs while traveling. (Doc. No. 59-2, p. 19–20.) On November 3, 2021, Davis again met with Templeton and Iannuzzi. Templeton and

2

Iannuzzi determined Plaintiff would not be as effective and productive while working from home. (Doc. No. 59-2, p. 18.) Davis suggested Plaintiff be allowed a six-month work from home accommodation after the return-to-work order to evaluate the effectiveness of work from home as a reasonable accommodation; however, this was denied by Templeton and Iannuzzi claiming it would only "be delaying the inevitable". (Id.)

Despite Plaintiff's managers denying a work from home accommodation in discussions with Davis, Davis twice told Plaintiff "no accommodations are off the table" and further requested follow-up with Plaintiff's doctor to understand whether there were any sufficient in-person accommodations available. (Doc. No. 59-2, p. 17–18.) After Davis received additional documentation from Plaintiff's doctor, Davis again met with Templeton and Iannuzzi. Davis informed them it was recommended by herself and legal that a three-month work from home trial period be allowed following Defendant's return to work order to assess effectiveness and "mitigate risk". (Doc. No. 59-2, p. 9.) Iannuzzi stated he would escalate the issue within his line of business, at which point Iannuzzi's manager, Jennifer Doyle ("Doyle"), was included on communications. (Id.) In a meeting between Davis, Templeton, Iannuzzi, and Doyle, concerns were raised over "regulatory and compliance measures" that could be implicated if Plaintiff were allowed to work from home. (Doc. No. 59-2, p. 7.) Ultimately, because Defendant delayed the return to office order, Templeton informed Davis on December 28, 2021, Plaintiff "can continue to work from home at this point, we are delaying making a final decision on this request until a later date." (Doc. No. 59-2, p. 4.) Thus, Davis, closed Plaintiff's accommodation case. (Doc. No. 59-2, p. 3.)

Simultaneous to Plaintiff's accommodation request, Defendant's Corporate and Investment Banking division began discussing reduction in cost methods including potential layoffs due to the global financial market conditions. (Doc. No. 56-4, p. 5.) On or around August

3

18, 2021, Doyle and Iannuzzi put together a Business Case for Reduction in Force. (Id.) The first pool of managing directors considered for displacement consisted of males over the age of 40, but did not include Plaintiff. (Id.) After performance rankings were conducted considering "leadership, collaboration, product knowledge developing new business, and other factors", a single managing director from the first pool was chosen for displacement. (Doc. No. 56-4, p. 6.) This Business Case for Reduction in Force was finalized and approved on November 19, 2021. (Id.)

Between November 19 and December 6, 2021, in light of revenues continuing to decrease within the Corporate and Investment Banking division, Doyle and Iannuzzi determined an additional managing director would need to be displaced. (Id.) Plaintiff was included in the second pool of candidates for displacement. Because Plaintiff's total compensation was $2.6 million in 2020, "his termination would result in the most cost savings." (Doc. No. 56-4, p. 7.) On December 6, 2021, Plaintiff was selected for displacement and a revised version of the Business Case for Reduction in Force was approved on December 14, 2021. (Id.) On February 9, 2022, Defendant informed employees they would be required to return to office on March 14, 2022. (Doc. No. 59-23, p. 2–5.) On February 24, 2022, Plaintiff was terminated.

On March 14, 2023, Plaintiff filed this lawsuit alleging ADA violations, discrimination and retaliation on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), and wrongful discharge in violation of public policy under North Carolina law. (Doc. No. 1.) On April 20, 2023, Defendant answered the Complaint. (Doc. No. 6.) Defendant moved for Summary Judgment on all claims on January 19, 2024. (Doc. No. 55.) Plaintiff also moved for Partial Summary Judgment only as to liability against Defendant for failure to accommodate under the ADA. (Doc. No. 57.)

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324.  The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995). Comparatively, when the moving party would bear the burden of proof at trial, the initial burden is satisfied by producing evidence upon which a reasonable jury could return a favorable verdict. Brinkley v. Harbour Recreation Club, 180 F.3d 596, 614 n.10 (4th Cir. 1999). In such circumstances, summary judgment will be granted unless the nonmoving party produces evidence upon which a reasonable jury could return a verdict in their favor. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Anderson, 477

U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Id. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50. In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." Id. at 252.

### III. ANALYSIS

**A. Age Discrimination in Employment Act**

The ADEA prohibits employers from "discharge[ing] any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on an ADEA claim, a plaintiff must prove by a preponderance of the evidence that age constituted the but-for cause of the adverse employment action. Gross v. FBL Fin. Servs., 557 U.S. 167, 176 (2009). A plaintiff may rely on either direct evidence of discriminatory intent or indirect evidence established through the adapted inferential proof scheme announced by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Bonds v. Leavitt, 629 F.3d 369, 386 (4th Cir. 2011) (applying McDonnell Douglas to ADEA claims); Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996) (recognizing discriminatory intent based on age can be demonstrated by direct evidence). In either case, the plaintiff carries the ultimate burden of establishing that unlawful discrimination was the "but for" cause of his injury and that "age was

the 'reason' that the employer decided to act." See Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 234 (4th Cir. 2016) (quoting Gross, 557 U.S. at 176). Importantly, "an employee cannot prevail on an age discrimination claim by showing that age was one of multiple motives for an employer's decision; the employee must prove that the employer would not have [taken the adverse employment action] in the absence of age discrimination." Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019) (citing Gross, 557 U.S. at 177).

Here, Plaintiff asserts Defendant discriminated against him in violation of the ADEA by "treat[ing] Plaintiff less favorably than substantially younger employees [and] terminating his employment and replacing him with much younger employees." (Doc. No. 1, p. 19.) Defendant argues Plaintiff has failed to establish a prima facie case for age discrimination because "[t]here is no evidence that age had anything to do with Wells Fargo's inclusion of [Plaintiff] in the [reduction in force]." (Doc. No. 56, p. 16.) Plaintiff contends Plaintiff's deposition contains eighteen (18) pages of testimony constituting circumstantial evidence of age discrimination, (Doc. No. 62, p. 17; Doc. No. 63-4, p. 9–29.) However, as required to constitute direct evidence, Plaintiff's testimony does not show his termination resulted from age-bias "without any inference or presumption." O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 548 (4th Cir. 1995) (defining direct evidence as evidence which "would prove the existence of a fact . . . without any inference of presumptions").

Taking the facts in the light most favorable to Plaintiff, the evidence shows Farrell and Doyle held at least some discriminatory animus toward Wells Fargo employees based upon their age. Farrell and Doyle made comments indicating they would prefer Defendant replace older employees with younger ones. However, nowhere in his brief has Plaintiff pointed to direct evidence that Defendant intended to replace Plaintiff specifically with younger employees or that

7

Plaintiff was "old" and should be replaced. Instead, all of Plaintiff's testimony points only to circumstances where Farrell and Doyle made references about other employees of Defendant being "old" or "grandparent[s]", none of which Plaintiff believed to be referencing him directly. See e.g., Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1203 (11th Cir. 2010) (finding direct evidence of age discrimination sufficient to surpass summary judgment where employer "called [Plaintiff] into his office at the end of the month and fired her, explaining that 'I need someone younger I can pay less . . . I need [a 25 year old employee]. . . .'"); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006) (finding no direct evidence of age discrimination where an employer allegedly said job candidates like plaintiff "would have a hard time getting a job because 'hiring people at that age, they didn't get the work out of them that they did younger people,'" because plaintiff presented no evidence that the comment had any nexus with the decision to terminate him); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511–12 (4th Cir. 1994) (finding employer's comment that "there comes a time when we have to make way for younger people" was not direct evidence of age discrimination because the comment lacked sufficient nexus to termination of the plaintiff employee).

      Furthermore, to the extent age-biased comments are accredited to Farrell, Plaintiff has failed to create a genuine dispute of material fact regarding whether Farrell played a decisive role in his termination. To survive summary judgment, Plaintiff must demonstrate that Farrell's age-based comments bore a sufficient "nexus" to his termination such that Farrell's discriminatory intentions could be found by a reasonable jury to have been the but-for cause of Plaintiff's termination. Plaintiff has not carried his burden as the record shows Farrell played no role in his termination nor did he play a determinative role in the process leading up to the decision. Farrell

retired in June of 2021, (Doc. No. 56, p. 17), and Plaintiff was not terminated until February of 2022.

Because Plaintiff provided no direct evidence demonstrating he was terminated as a result of discriminatory animus based on his age, Plaintiff must establish a circumstantial case under the burden shifting framework set forth in McDonnell Douglas. Fields v. Verizon Servs. Corp., 493 Fed. App'x 371, 375 (4th Cir. 2012). In the ADEA context, a plaintiff establishes a prima facie case of age-related discriminatory discharge by showing (1) that he belongs to a statutorily-protected class, here "individuals who are at least 40 years of age," 29 U.S.C. § 631(a); (2) an adverse employment action by his employer; (3) satisfactory job performance; and (4) different treatment from similarly situated employees outside the protected class. See Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

As an initial matter, there is no evidence to suggest individuals outside of the protected class should have also been included in the reduction in force. However, even assuming for purposes of this Motion that Plaintiff met his prima facie showing of wrongful termination under the ADEA, a reasonable jury could not find Plaintiff was terminated for age-based discriminatory animus. Defendant has met its burden of production to demonstrate a legitimate, non-discriminatory reason for terminating Plaintiff—namely, cost savings. (Doc. No. 56-2, p. 5; Doc. No. 56-4, p. 5.) Under the McDonell Douglas framework, Plaintiff must now carry the burden to demonstrate that a jury issue exists regarding whether Defendant's proffered reason is mere pretext for unlawful age discrimination. This requires a showing by Plaintiff of some evidence creating a genuine dispute concerning the truth of Defendant's proffered reason for discharging him, such that a reasonable trier of fact could find the "real reason" underlying the discharge was age discrimination. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148 (2000); Rowe v.

9

Marley Co., 233 F.3d 825, 830 (4th Cir. 2000). While the Court does not foreclose the possibility Defendant's action of terminating Plaintiff was for a reason other than cost savings, Plaintiff presents nothing more than conclusory allegations of age discrimination insufficient to satisfy Plaintiff's burden as to an ADEA claim. Accordingly, the Court finds Plaintiff has failed to create a jury issue on pretext concerning Plaintiff's age discrimination claim.

To the extent Plaintiff alleges his termination was "in retaliation for his protected activity of opposing age discrimination", (Doc. No. 1, p. 19), this too fails. To assert a claim for retaliation under the ADEA, Plaintiff must prove: (1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal link between the protected activity and the adverse action Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006). Plaintiff has presented no evidence that he was engaged in a protected activity. See E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005) (defining protected activity as one in which an employee opposes an employment practice on the grounds that is unlawful). In fact, when responding to a question by defense counsel inquiring as to whether Plaintiff ever "complained to anyone at Wells Fargo about these age-related comments", Plaintiff unambiguously stated: "So yeah, that—that would be basically, if you were to make a—if you were to complain, you would be writing your death sentence, so no." (Doc. No. 63-4, p. 27.) Therefore, summary judgment is **GRANTED** to Defendant as to Plaintiff's ADEA claims.

**B.     Americans with Disabilities Act**

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges or employment." 42 U.S.C. § 12112(a). One form of prohibited ADA discrimination is an employer's

failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee." 42 U.S.C. § 12112(b)(5)(A).

To survive summary judgment for an ADA failure to accommodate claim, a plaintiff is required to show: (1) he was disabled; (2) the employer had notice of his disability; (3) he could perform the essential functions of his position with a reasonable accommodation; and (4) the employer refused to make such accommodation. Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). To survive summary judgment for an ADA discrimination claim, a plaintiff is required to "provide evidence sufficient to demonstrate that (1) he 'was a qualified individual with a disability'; (2) he was 'discharged'; (3) he 'was fulfilling his employer's legitimate expectations at the time of discharge'; and (4) 'the circumstances of his discharge raise a reasonable inference of unlawful discrimination.'" Reynolds v. Am. Nat. Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (quoting Rohan v. Networks Presentations, LLC, 375 F.3d 266, 277 n.9 (4th Cir. 2004)). If the employee makes this showing, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Lettieri v. Equant, 478 F.3d 640, 646 (4th Cir. 2007). If the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation was "actually a pretext for discrimination." Id. (citation and internal quotation marks omitted).

Here, Plaintiff asserts Defendant discriminated against him in violation of the ADA by failing to provide him with reasonable accommodations. Plaintiff also alleges Defendant failed to engage in the interactive process required under the ADA in good faith and ultimately terminated Plaintiff based on his disability. After reviewing the pleadings, exhibits, and applicable law, the Court finds Defendant is not entitled to summary judgment on any of Plaintiff's claims under the

ADA. In short, it is clear from the records the parties' evidence reveals a genuine dispute as to material facts which preclude entry of judgment for Defendant as a matter of law on all ADA claims brought by Plaintiff. Similarly, Plaintiff is not entitled to entry of judgment as a matter of law against Defendant for his failure to accommodate claim. For example, the evidence indicates disputes as to how, when, and why Plaintiff was added to Defendant's reduction in force plan as well as what genuine discourse, if any, was had regarding Plaintiff's request for an accommodation. Accordingly, resolution of Plaintiff's ADA claims is appropriately left for a jury. Thus, Defendant's Motion is **DENIED** as to Plaintiff's ADA claims and Plaintiff's Motion is **DENIED** as to the failure to accommodate claim.

## C.     North Carolina Wrongful Discharge in Violation of Public Policy

North Carolina's Equal Employment Practices Act ("NCEEPA") provides that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap." N.C. GEN. STAT. § 143-422.2(a). When asserting a wrongful discharge claim in violation of public policy as set forth by the NCEEPA, a plaintiff bears the same evidentiary burden as required for federal discrimination cases. See N.C. Dep't of Corr. v. Gibson, 301 S.E.2d 78, 84 (N.C. 1983) (adopting the "evidentiary standards and principles of law" of Title VII for discrimination claims asserted pursuant to the NCEEPA); Brown v. Martin Marietta Materials, Inc., 440 F. Supp. 3d 503, 519–20 (M.D.N.C. 2020) (holding that a wrongful discharge claim in violation of the NCEEPA rises and falls with an ADA claim); Hughes v. Bedsole, 48 F.3d. 1376 (4th Cir. 1995); Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp. 2d 854, 875 (M.D.N.C. 2003) ("When considering a wrongful-discharge claim on the basis of age under North Carolina law, [courts] should apply the same standards that apply under the ADEA.").

Ultimately, Plaintiff's claim under North Carolina common law for wrongful discharge on account of his disability proceeds past summary judgment for the same reasons Plaintiff's federal disability claims do. However, Plaintiff's North Carolina claim based on age discrimination is dismissed for the same reasons articulated by the Court in analysis of the analogous federal claim.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (Doc. No. 55), is **GRANTED IN PART** and **DENIED IN PART**. Count II of the Complaint, discrimination and retaliation on the basis of age in violation of ADEA, is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment, (Doc. No. 57), is **DENIED**.

**IT IS FURTHER ORDERED** that the Parties may have until **April 19, 2024**, to provide the Court with updated Pretrial Submissions in consideration of this Order.

**IT IS FURTHER ORDERED** the parties shall **TAKE NOTICE** that trial is scheduled to begin on Monday, May 6, 2024. (Doc. No. 9). Docket Call will take place at 9:01 a.m. on May 6, 2024, and the Final Pretrial Conference will take place following Docket Call, in Courtroom #5B of the Charles R. Jonas Federal Building, located at 401 West Trade Street, Charlotte, North Carolina, 28202.

**IT IS SO ORDERED.**

Signed: April 16, 2024

Frank D. Whitney
United States District Judge