**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER JOHN BILLESDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action No. 3:23-cv-160-FDW** |
| v. | ) | |
| | ) | |
| WELLS FARGO SECURITIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE,
FOR A NEW TRIAL AND TO ALTER OR AMEND THE JUDGMENT**

# TABLE OF CONTENTS

**Page(s)**

BOTTOM LINE UP FRONT ............................................................................. 1

ARGUMENT ................................................................................................... 3

I.  THIS COURT SHOULD GRANT DEFENDANT JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON ALL OF PLAINTIFF'S CLAIMS .................................. 4

    A.  ADA Failure-to-Accommodate Claim ............................................... 4

    B.  ADA Disability-Discharge Claim ...................................................... 6

    C.  North Carolina Wrongful-Discharge Claim ....................................... 8

    D.  ADA Retaliation Claim ...................................................................... 8

II.  THIS COURT SHOULD MODIFY THE JUDGMENT BECAUSE THE ADA RETALIATION CLAIM SHOULD HAVE BEEN DECIDED IN A BENCH TRIAL IN DEFENDANT'S FAVOR ....... 13

III.  THIS COURT SHOULD EITHER GRANT REMITTITUR OR AWARD A NEW TRIAL ON DAMAGES ........................................................................................ 15

    A.  Back Pay ........................................................................................... 15

    B.  Front Pay .......................................................................................... 16

    C.  Emotional Distress And Punitive Damages ...................................... 18

CONCLUSION ............................................................................................... 19

Case 3:23-cv-00160-FDW-SCR    Document 118    Filed 08/26/24    Page 2 of 28

# TABLE OF AUTHORITIES

**Page(s)**

C‌ASES

*Alston v. Holy Cross Health, Inc.*,
    No. CV DLB-20-2388, 2023 WL 2743332 (D. Md. Mar. 31, 2023) .......................................5

*Batson v. Salvation Army*,
    897 F.3d 1320 (11th Cir. 2018) ................................................................................................5

*Benson v. Thompson Cadillac-Oldsmobile, Inc.*,
    No. 5:04-CV-237-F(1), 2006 WL 8438575 (E.D.N.C. July 18, 2006).............................16, 17

*Benson v. Thompson Cadillac-Oldsmobile, Inc.*,
    287 F. App'x 249 (4th Cir. 2008) ....................................................................................16, 17

*Chamberlain v. Securian Fin. Grp., Inc.*,
    180 F. Supp. 3d 381 (W.D.N.C. 2016) ....................................................................................8

*Cline v. Wal-Mart Stores, Inc.*,
    144 F.3d 294 (4th Cir. 1998) .................................................................................................15

*Cowgill v. First Data Techs., Inc.*,
    41 F.4th 370 (4th Cir. 2022) ...............................................................................4, 5, 10, 12

*Daulatzai v. Maryland*,
    97 F.4th 166 (4th Cir. 2024) ...........................................................................................3, 14

*Depaoli v. Vacation Sales Assocs., L.L.C.*,
    489 F.3d 615 (4th Cir. 2007) .................................................................................................18

*Dominic v. Consol. Edison Co. of N.Y., Inc.*,
    822 F.2d 1249 (2d Cir. 1987)................................................................................................18

*Dotson v. Pfizer, Inc.*,
    558 F.3d 284 (4th Cir. 2009) .................................................................................................18

*Dowe v. Total Action Against Poverty in Roanoke Valley*,
    145 F.3d 653 (4th Cir. 1998) ...........................................................................................7, 10

*Duke v. Uniroyal Inc.*,
    928 F.2d 1413 (4th Cir. 1991) ..............................................................................................16

Case 3:23-cv-00160-FDW-SCR    Document 118    Filed 08/26/24    Page 3 of 28

*Eshelman v. Puma Biotech., Inc.*,
 2 F. 4th 276 (4th Cir 2021) ..................................................................15

*Fernandez v. N. Shore Orthopedic Surgery & Sports Med., P.C.*,
 79 F. Supp. 2d 197 (E.D.N.Y. 2000) ......................................................18

*Franchina v. City of Providence*,
 881 F.3d 32 (1st Cir. 2018) ....................................................................6

*Gasperini v. Ctr. for Humans.*,
 518 U.S. 415 (1996) ...............................................................................15

*Gilliam v. Allen*,
 62 F.4th 829 (4th Cir. 2023) ..................................................................14

*GO Comput., Inc. v. Microsoft Corp.*,
 508 F.3d 170 (4th Cir. 2007) ..................................................................14

*Gries v. Zimmer, Inc.*,
 795 F. Supp. 1379 (W.D.N.C. 1992) .......................................................18

*Hunter v. Town of Mocksville*,
 897 F.3d 538 (4th Cir. 2018) ..................................................................16

*Israelitt v. Enter. Servs. LLC*,
 78 F.4th 647 (4th Cir. 2023) ..................................................................13

*Israelitt v. Enter. Servs. LLC*,
 No. CV SAG-18-1454, 2021 WL 795150 (D. Md. Mar. 2, 2021) ...........7

*Kelly v. Town of Abingdon*,
 90 F.4th 158 (4th Cir. 2024) ................................................................6, 7

*Knussman v. Maryland*,
 272 F.3d 625 (4th Cir. 2001) ..................................................................15

*Koster v. Trans World Airlines, Inc.*,
 181 F.3d 24 (1st Cir. 1999) ....................................................................16

*Laing v. Fed. Express Corp.*,
 703 F.3d 713 (4th Cir. 2013) ..................................................................11

*Laird v. Fairfax Cnty.*,
 978 F.3d 887 (4th Cir. 2020) ....................................................................8

iii

*Lashley v. Spartanburg Methodist Coll.*,
    66 F.4th 168 (4th Cir. 2023) ........................................................................9

*Lebron v. Natl. R.R. Passenger Corp.*,
    513 U.S. 374 (1995)........................................................................................14

*Loveless v. John's Ford, Inc.*,
    232 F. App'x 229 (4th Cir. 2007) ...............................................................16

*Myrick v. Prime Ins. Syndicate, Inc.*,
    395 F.3d 485 (4th Cir. 2005) .........................................................................3

*Price v. City of Charlotte*,
    93 F.3d 1241 (4th Cir. 1996) .........................................................................3

*Raynor v. G4S Secure Sols. (USA) Inc.*,
    327 F. Supp. 3d 925 (W.D.N.C. 2018) ........................................................3

*Staudner v. Robinson Aviation, Inc.*,
    853 F. App'x 806 (4th Cir. 2021) ...............................................................16

*Tartaro-McGowan v. Inova Home Health, LLC*,
    91 F.4th 158 (4th Cir. 2024) .........................................................................5

*Weaver v. Casa Gallardo, Inc.*,
    922 F.2d 1515 (1st Cir. 1991)......................................................................17

*Xiao-Yue Gu v. Hughes STX Corp.*,
    127 F. Supp. 2d 751 (D. Md. 2001) ............................................................17

**STATUTES**

42 U.S.C. § 1981a ..............................................................................................18

42 U.S.C. § 12112 ...........................................................................................4, 6

42 U.S.C. § 12203 ..............................................................................................9

N.C.G.S. § 143-422.2...........................................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50 .............................................................................................1, 3

Fed. R. Civ. P. 59 ..................................................................................1–3, 14–15

## BOTTOM LINE UP FRONT

**I.** Under Federal Rules of Civil Procedure 50(b) and 59(a), Defendant seeks judgment as a matter of law or a new trial because, for each of the four claims tried to the jury, Plaintiff failed to adduce sufficient evidence on the essential element, and the verdict on each count was at the very least contrary to the clear weight of the evidence:

- **ADA Failure-to-Accommodate Claim:** This claim fails because the undisputed evidence shows Plaintiff was never denied an accommodation he needed while working. Plaintiff was permitted to work from home during the entire relevant period leading up to his discharge; it is legally irrelevant whether, but for the discharge, Plaintiff would have continued to receive an accommodation when other employees returned to the office.

- **ADA Disability-Discharge and North Carolina Wrongful-Discharge Claims:** These claims fail because there is no evidence whatsoever that could support a finding that Plaintiff's disability was a but-for cause of his discharge. If Plaintiff had not been disabled, yet still had requested to work 100% remotely for a non-disability reason, both sides agree he still would have been discharged—whether because of a reduction in force due to negative business conditions (Defendant's position) or because of the work-from-home request (Plaintiff's position).

- **ADA Retaliation Claim**: This claim fails because the evidence does not support a finding that Plaintiff's accommodation request was a but-for cause of his discharge. Even before Plaintiff requested an accommodation and well before his managers knew of that request, they considered him as a potential candidate for reduction in force; and even after his discharge, they laid off more employees who were otherwise similarly

1

situated but who had not requested an accommodation. The fact Plaintiff was added to an existing reduction in force begun for another employee is immaterial because that practice was typical where the business justifications for both employees were the same, and deteriorating market conditions required cutting an additional employee.

II. Under binding precedent, there is no right to a jury trial for ADA retaliation claims. This Court therefore should grant relief from this clear error of law under Rule 59(e), grant Defendant a bench trial on this claim, and find for Defendant for the reasons above.

III. At minimum, under Rules 59(a) and 59(e), the damages award must be reduced in several ways (or a new trial held):

- **Back Pay**: Because Plaintiff's own evidence of back pay was no greater than $4,225,558, the $6 million award cannot stand.

- **Front Pay:** The $14 million front pay award is grossly speculative and legally foreclosed by Plaintiff's subsequent employment history.

- **Punitive & Emotional Distress Damages:** The $1 million award of punitive damages for Plaintiff's ADA claim must at least be reduced to $200,000, so that when combined with the award of $100,000 for emotional distress, the award complies with the ADA's $300,000 cap for such damages. Moreover, if the verdict on Plaintiff's North Carolina wrongful-discharge claim is set aside, then the $1 million award of punitive damages for that claim must be set aside. Finally, if the only liability verdict that survives is the ADA retaliation claim, then the award of punitive damages and emotional-distress damages must be set aside entirely, because the ADA does not authorize such damages for that particular claim.

2

**ARGUMENT**

A movant is entitled to judgment as a matter of law under Rule 50(b) "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996). The motion must be granted if, viewing the evidence in the light most favorable to the non-moving party, "a reasonable jury could reach only one conclusion based on the evidence or if the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489 (4th Cir. 2005). Defendant moved for judgment as a matter of law at the close of Plaintiff's case and at the close of all evidence. Tr.xx–xx; Tr.xx–xx.[1]

A court should grant a new trial under Rule 59(a) where "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Raynor v. G4S Secure Sols. (USA) Inc.*, 327 F. Supp. 3d 925, 933 (W.D.N.C. 2018). Courts may weigh the evidence and consider the credibility of witnesses when making that Rule 59(a) determination. *Id.*

A court may alter or amend a judgment under Rule 59(e), among other things, "to correct a clear error of law or prevent manifest injustice." *Id.* at 934. "The standard for granting the motion is broad, as a court is authorized to reconsider its ruling on virtually any basis that it determines might have been an error or mistake in its judgment." *Daulatzai v. Maryland*, 97 F.4th 166, 178 (4th Cir. 2024).

---

[1] The certified transcript of trial proceedings is not yet available; this Memorandum's placeholder citations are consistent with both the draft transcript (which states that it cannot be cited) and trial counsel's recollection.

3

## I.  THIS COURT SHOULD GRANT DEFENDANT JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON ALL OF PLAINTIFF'S CLAIMS

### A.  ADA Failure-to-Accommodate Claim

Count I of Plaintiff's complaint alleged Defendant violated 42 U.S.C. § 12112(b)(5)(A), which forbids covered entities from "not making reasonable accommodations to the known physical or mental limitations" of qualified employees with a disability, unless those accommodations would impose an undue hardship.  *See* ECF 1, ¶ 71.  The essential element of this claim required Plaintiff to establish that Defendant in fact did not provide a reasonable accommodation for his disability.  *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 378 (4th Cir. 2022).  This Court's instructions to the jury properly included that element.  Tr.xx–xx.

Plaintiff failed to establish that element, so Defendant is entitled to judgment as a matter of law on this claim (or at minimum, a new trial).  The evidence is undisputed that Plaintiff actually received the accommodation he requested for the remainder of his period of employment:  working 100% remotely from home.  Plaintiff's formal accommodation request of August 31, 2021 asked that he be allowed "to continue to use his learned behavioral modification of working from home," Pltf.Ex.2, at 4, as did the attached letter from Dr. Midani, *id.* at 5.[2]  Every witness to testify on the substance of Plaintiff's request understood it that way, including Plaintiff.  *See* Tr.xx (Davis); Tr.xx–xx (Billesdon); Tr.xx, xx (Doyle).  And the record is unequivocal that, in fact, Plaintiff was permitted to work from home during the entire period between his accommodation request and discharge.  *See* Tr.xx, Tr.xx–xx, xx (Davis); Tr.xx–xx (Billesdon); Tr.xx–xx (Doyle).  To be sure, all of Defendant's employees were allowed to work from home during this phase of the COVID-19 pandemic.  Tr.xx (Davis).  The law is clear, though, that an employer satisfies its duty to accommodate disabled employees so long as they receive their requested accommodation,

---

[2] The exhibits cited in this Memorandum are included in an accompanying Appendix.

4

regardless of whether non-disabled employees also receive that accommodation. *See Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 169 (4th Cir. 2024). Thus, because Defendant "provided the requested accommodation" to Plaintiff, his failure-to-accommodate claim fails as a matter of law. *Cowgill*, 41 F.4th at 379.

Plaintiff tried to avoid that conclusion by arguing that Defendant denied his request for a *future* accommodation when employees generally would be required to return to the office. Tr.xx; *see* Tr.xx (Davis). Plaintiff's argument is factually baseless because the evidence shows Defendant did not deny any such request, instead engaging in an iterative process with Plaintiff and telling him he could raise the issue again whenever the (indefinitely delayed) return-to-office policy was reinstated. *See infra* at 14. More importantly, though, Plaintiff's argument is legally wrong.

Under the ADA's plain text, "[t]he speculative possibility of being denied an accommodation in the future is not enough to sustain a failure-to-accommodate claim." *Alston v. Holy Cross Health, Inc.*, No. CV DLB-20-2388, 2023 WL 2743332, at *10 (D. Md. Mar. 31, 2023). Indeed, the Court of Appeals for the Eleventh Circuit rejected Plaintiff's exact argument in *Batson v. Salvation Army*, 897 F.3d 1320 (11th Cir. 2018). There, an employee requested that the Salvation Army adjust her travel schedule and allow her to telecommute occasionally. *Id.* at 1326. Her supervisors denied the request, but about a week later the employee went on FMLA leave. *Id.* When she returned, she was told her position had been eliminated, and she was terminated shortly afterward. *Id.* "The problem" for the plaintiff's failure-to-accommodate claim, the Eleventh Circuit explained, was that she offered "no evidence that before her FMLA leave and her termination she needed either of the accommodations she previously had requested generally." *Id.* While the record established her employer's "intent to deny her accommodation," without

evidence of "a specific instance in which she needed an accommodation and was denied one, she [could] not establish a failure to accommodate." *Id.*

Here, even if Defendant had denied Plaintiff's request for a future accommodation (it did not), at no point was Plaintiff unable to use the work-from-home measures that he claimed to need. Plaintiff was therefore never in fact denied a reasonable accommodation. Defendant is entitled to judgment as a matter of law on this claim, or a new trial at minimum.

### B. ADA Disability-Discharge Claim

Count I of the complaint also alleged Defendant violated 42 U.S.C. § 12112(a), which forbids discrimination against qualified individuals "on the basis of disability" "in regard to … the … discharge of employees." *See* ECF 1, ¶ 73. The essential element of this claim required Plaintiff to establish but-for causation—*i.e.*, if Plaintiff had not been disabled but everything else remained the same, the discharge would not have occurred. *Kelly v. Town of Abingdon*, 90 F.4th 158, 169 (4th Cir. 2024). This Court's jury instructions properly included that element as well. Tr.xx.

Plaintiff failed to establish that element, so Defendant is entitled to judgment as a matter of law on this claim (or at minimum, a new trial). If Plaintiff had not been disabled, *yet still had requested to work from home 100% of the time* for some non-disability reason, he still would have been discharged. *See Franchina v. City of Providence*, 881 F.3d 32, 53 (1st Cir. 2018) (explaining that but-for causation requires showing that "all else being equal," discrimination would not have occurred without protected trait). Indeed, reflecting the undisputed evidence, *the parties agree* on this dispositive point (though they disagree on *why* Plaintiff still would have been discharged).

Start with the direct evidence of the reasons for Plaintiff's discharge. Defendant's witnesses consistently testified that Plaintiff was included within a reduction in force for business

reasons, not because he was disabled. *See* Tr.xx, Tr.xx (Iannuzzi); Tr.xx (Doyle). Moreover, Plaintiff himself opined that the reason for his discharge was his accommodation request, not his disability. *See* Tr.xx (Billesdon) (testifying that the only thing that changed between July 2021 and the end of 2021 was that he asked for an accommodation).

The circumstantial evidence all further confirms that Plaintiff's disability was not a but-for cause of his discharge. Consider the timing. After becoming disabled when he was 18, Plaintiff had worked for Defendant for 25 years. Tr.xx, xx (Billesdon). Before he left the Charlotte office in 2004, Plaintiff's prior managers were aware of his disability. Tr.xx–xx (Billesdon). They were also aware of his disability at all times after moving to California in 2004. Tr.xx. And Doyle, Iannuzzi, and Templeton specifically were each aware of Plaintiff's disability long before he was laid off. *See* Tr.xx (Doyle) (at least a decade); Tr.xx, xx (Iannuzzi) (within 5 years of meeting Plaintiff in 2013); Tr.xx (Templeton) (before request for accommodation). Without any direct evidence of disability discrimination, the "lengthy time lapse" between the relevant decisionmakers' knowledge of Plaintiff's disability and his termination "negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

Plaintiff's sole response was to treat an alleged discharge because of his accommodation request as equivalent to an alleged discharge because of his disability. Tr.xx. But those are legally distinct rationales. "[D]iscrimination and retaliation claims rely on different theories of motive." *Kelly*, 90 F.4th at 170. To prove a discrimination claim, Plaintiff must show that Defendant "was motivated by his disability, not simply his protected action." *Id.*; *see Israelitt v. Enter. Servs. LLC*, No. CV SAG-18-1454, 2021 WL 795150, at *7 (D. Md. Mar. 2, 2021) (granting summary judgment to defendant on discriminatory-discharge claim where employer-employee interactions

7

"centered on his accommodation requests, not the claimed disability underlying them"). Indeed, while the *retaliation* instruction required Plaintiff to show only that he would not have been discharged "but-for his accommodation request (that is, if he had not made the accommodation request)," *see* Tr.xx, the *disability-discharge* instruction instead required Plaintiff to show that he would not have been discharged "but-for his disability *(that is, if he were not disabled)*," *see* Tr.xx (emphasis added). And here, the jury could not reasonably have found that Plaintiff would have kept his job if he was not disabled yet still had requested to work from home 100% of the time for some reason other than disability: all the evidence proffered by both sides was to the contrary.

Accordingly, Plaintiff failed to establish that but for his disability, he would not have been discharged. Defendant is entitled to judgment as a matter of law on this claim, or a new trial at minimum.

## C. North Carolina Wrongful-Discharge Claim

Count III of the complaint alleged Defendant violated the public policy of North Carolina set out in N.C.G.S. § 143-422.2, which safeguards the right to hold employment without discrimination "on account of … handicap." N.C.G.S. § 143-422.2(a); *see* ECF 1, ¶ 86. As the Court instructed the jury, the standards governing this claim are the same as those governing Plaintiff's disability-discharge claim under the ADA. *See Chamberlain v. Securian Fin. Grp., Inc.*, 180 F. Supp. 3d 381, 405 (W.D.N.C. 2016); Tr.xx. Defendant is therefore entitled to judgment as a matter of law on the former claim (or at minimum, a new trial) for the same reasons provided above for the latter claim.

## D. ADA Retaliation Claim

The ADA "prohibits retaliation against employees who seek the Act's statutory protections." *Laird v. Fairfax Cnty.*, 978 F.3d 887, 892 (4th Cir. 2020) (citing 42 U.S.C.

§ 12203(a)–(b)). As already discussed, the essential element of this claim required Plaintiff to establish that his request for an accommodation "was a but-for cause" of his discharge, *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 176 (4th Cir. 2023), and this Court so instructed the jury, Tr.xx.

Plaintiff failed to establish that element, so Defendant is entitled to judgment as a matter of law on this claim (or at minimum, a new trial). For starters, here again, the only direct evidence of the cause for Plaintiff's discharge—the contemporaneous documentation of the decision and the testimony of Plaintiff's managers—shows that he would have been selected for a reduction in force even if he had not made his request for accommodation. That evidence demonstrates the asset-backed-finance market was headed downhill in the second half of 2021, and Plaintiff was selected for a reduction in force to cut costs. Tr.xx, xx, Tr.xx–xx, xx–xx, xx, xx (Iannuzzi); Tr.xx–xx, xx (Doyle); Tr.xx–xx (Templeton); *see* Pltf.Ex.15 (business case for RIF). Doyle expressly testified that the reduction-in-force process and the accommodation process in Plaintiff's case had nothing to do with one another. Tr.xx. And Iannuzzi and Doyle consistently attributed Plaintiff's discharge solely to business reasons unrelated to any accommodation request. *See* Tr.xx, xx, Tr.xx, xx. Templeton also perceived no animosity in Iannuzzi toward Plaintiff during their discussions about including him in the reduction in force. Tr.xx. Indeed, even Davis—whom Plaintiff himself affirmatively called as a witness—testified that the discharge decision was separate from the accommodations process with which she was involved. Tr.xx.

The circumstantial evidence, once again, all confirms that Plaintiff's accommodation request was not a but-for cause of his discharge: Before Plaintiff requested an accommodation and his managers knew about the request, they were considering him for a reduction in force; after discharging him, they also discharged otherwise similarly situated employees who had not

9

requested an accommodation; and there was no reason for them to preemptively discharge him to avoid granting an accommodation, because an accommodation acceptable to both sides remained a possibility given the progress that had been made in the interactive process.

*First*, it is undisputed in the record that Iannuzzi and Templeton discussed the potential need for reductions in force in the early summer of 2021, and that Templeton suggested Plaintiff's name to Iannuzzi in the late summer. Tr.xx–xx (Templeton); Tr.xx (Iannuzzi). It is also clear that Plaintiff did not even request his accommodation until August 31, 2021, Pltf.Ex.2, at 2, and that Templeton and Iannuzzi did not learn of Plaintiff's accommodation request until October 22, 2021, at the earliest. Pltf.Ex.1, at 25 (Davis notes); Tr.xx (Davis); Tr.xx–xx (Templeton); Tr.xx (Iannuzzi). Plaintiff's accommodation request cannot have played any role in the decision to begin considering him for a reduction in force, which is compelling evidence that it did not play a role in eventually selecting him. *See Dowe*, 145 F.3d at 657.

*Second*, it is also undisputed in the record that Defendant laid off additional employees otherwise similarly situated to Plaintiff, including after he was discharged. It laid off Fitzhugh on the same day as Plaintiff, Tr.xx (Iannuzzi), and Abely and Glidewell after Plaintiff was discharged, Tr.xx–xx (Doyle), Tr.xx (Iannuzzi). The business case for discharging Fitzhugh rested on the same fundamentals as for Plaintiff—cost and ability to absorb responsibilities. Tr.xx (Doyle); Tr.xx–xx, xx, xx (Iannuzzi). Abely was included in Templeton's initial set of three suggested names (along with Fitzhugh and Plaintiff) because he too was highly paid and his responsibilities could be absorbed. Tr.xx–xx (Doyle). Defendant thus laid off all three employees in the group initially considered for a reduction in force and still one more after that, reducing the total number of directors in the sales side of asset-backed finance from seven to three between late 2021 and the first half of 2023. Tr.xx–xx. That consistent approach to layoffs—including of employees who

did not request accommodations—confirms Plaintiff would have been laid off regardless of his request. *See Laing v. Fed. Express Corp.*, 703 F.3d 713, 721 (4th Cir. 2013).

*Third*, the evidence shows that Defendant remained open to working with Plaintiff to find a suitable accommodation, so there was no reason for Defendant to preemptively discharge Plaintiff to avoid making an accommodation. The preliminary delay in initiating the process was due to Plaintiff's letter sitting in a spam folder. Tr.xx (Billesdon). From there, Davis had frequent conversations with Plaintiff and relayed Iannuzzi and Templeton's questions about Plaintiff's ability to travel for work. Tr.xx–xx; Pltf.Ex.2, at 21. Iannuzzi and Templeton thought that 100% remote work would harm effectiveness and productivity, so they proposed in-office alternatives. Pltf.Ex.1, at 18; Tr.xx–xx (Davis). Davis relayed Iannuzzi and Templeton's questions about whether in-office accommodations would suffice. Tr.xx. Plaintiff then took about a month to send Defendant additional medical opinions justifying his positions about in-office accommodations, Tr.xx–xx (Davis), and Plaintiff's managers formally selected him for the reduction in force *before* they knew of those positions, *see* Pltf.Ex.15 (business case for RIF); Pltf.Ex.1, at 9, 18 (Davis notes); Tr.xx–xx (Davis); Tr.xx, xx–xx (Iannuzi), Tr.xx–xx (Doyle). Doyle and Iannuzzi decided shortly thereafter that they would need to escalate Plaintiff's request. Tr.xx–xx (Davis). Finally, with the onset of the omicron variant of COVID, Defendant delayed its return-to-office policy indefinitely and told Plaintiff that he could make a new request if and when a return-to-office policy was in fact implemented. Tr.xx–xx, xx (Davis). Defendant's proactive handling of Plaintiff's request shows there was no need to preemptively terminate him to avoid an accommodation when there was no reason to doubt a workable solution could have been reached. *See* Tr.xx (Billesdon testifying about feasible in-office accommodations); Tr.xx–xx (Doyle testifying to her previously expressed willingness to give Plaintiff some flexibility).

In the face of all this, Plaintiff asked the jury to infer retaliation based on a few factors that he tried to portray as suspicious. But none of this was even smoke, let alone sufficient basis to find a fire in light of the record as a whole.

*First*, Plaintiff made much of the fact that he was added to an existing reduction-in-force that had already been initiated for Fitzhugh, resulting in Plaintiff's discharge before what had been the expected return-to-office date. But Defendant's managers credibly explained why that procedural decision rested on multiple business reasons. COVID had put Defendant's asset-backed-finance division into a freefall until the federal government stepped in to stabilize the markets. Tr.xx–xx (Doyle). But by 2021 the government began signaling its intent to step back, which then led to another severe downturn for asset-backed finance. *Id.* Doyle added Plaintiff to the already-pending reduction in force because the deteriorating market conditions after Fitzhugh's initial selection made it necessary to make further cuts. Tr.xx–xx. Moreover, adding an employee to an already-pending reduction in force was typical where, as here, the business justifications are the same for both employees. Tr.xx (Robinette). The managers further explained that discharging multiple employees at the same time helps avoid the harm to morale that can result from successive layoffs. Tr.xx–xx, Tr.xx (Iannuzzi); Tr.xx (Doyle).

*Second*, Plaintiff pointed to Defendant's overall income as evidence that there was no need to cut anyone other than Fitzhugh. That theory, however, entirely failed to account for Doyle's detailed explanation of the decreasing revenues for Defendant's asset-backed-finance group, which was the relevant business for evaluating the need to cut costs. That group stopped making money in the second half of 2021 after the federal government signaled it would level down its support of the market. Tr.xx; Deft.Ex.91-93. Plaintiff's theory is also irreconcilable with the continuation of cost-cutting measures after his layoff by discharging two more similar employees.

*Third*, Plaintiff pointed to his high level of compensation and historically favorable work performance as evidence against the purported business case for discharging him. But that has matters backwards: high levels of compensation were naturally a strike in *favor* of inclusion within a cost-cutting reduction in force. *See* Tr.xx–xx, xx. Fitzhugh had the highest level of compensation of the three employees with the same non-managerial job code against whom he was compared, Tr.xx–xx, xx; Deft.Ex.50, and Plaintiff then had the highest compensation at the time he was compared to two other employees with the same managerial job code, Tr.xx–xx, xx; Deft.Ex.58. Plaintiff's favorable performance did not save his job because his managers evaluated the ability of his remaining team to absorb his responsibilities and accomplish the same results— which the evidence suggests they did. Tr.xx; Tr.xx, xx–xx. And Farrell explained why simply cutting discretionary bonuses was no answer to the need to reduce costs: it is difficult to attract top talent if a company slashes bonuses when times get tight. Tr.xx–xx.

With all direct and circumstantial evidence cutting decisively against any inference of retaliatory motive, the jury had no basis to find that Plaintiff's accommodation request was a but-for cause of his discharge. On this claim too, therefore, Defendant is entitled to judgment as a matter of law, or at least a new trial given the weight of the evidence.

## II.    THIS COURT SHOULD MODIFY THE JUDGMENT BECAUSE THE ADA RETALIATION CLAIM SHOULD HAVE BEEN DECIDED IN A BENCH TRIAL IN DEFENDANT'S FAVOR

Wholly apart from the evidence, it was clear legal error for the ADA retaliation claim to go to the jury in the first place because that claim should have been tried (if at all) in a bench trial. As the Fourth Circuit held last year, the ADA does not authorize compensatory or punitive damages for retaliation claims, and without those legal damages, there is no jury-trial right for such purely equitable claims. *Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 657–60 (4th Cir. 2023).

13

It thus was a "clear error of law" to submit the ADA retaliation claim to the jury, and this Court should modify the judgment under Rule 59(e) to correct the error. *GO Comput., Inc. v. Microsoft Corp.*, 508 F.3d 170, 177 (4th Cir. 2007). Defendant had no meaningful opportunity to raise this issue before the retaliation claim was sent to the jury. Plaintiff did not propose a retaliation instruction in his initial instructional filings, ECF 77; instead, Plaintiff's counsel proposed it for the first time late on the night before closing arguments, *see* Tr.xx. Defense counsel promptly objected the next morning to the belated addition. Tr.xx–xx. This Court overruled that objection, relying on its previous motion-in-limine ruling that Plaintiff's complaint contained facts putting Defendant on sufficient notice of an ADA retaliation claim. Tr.xx; ECF 104, at 7. Defendant respectfully disagrees with both of those rulings and preserves them for appeal. Even accepting them, however, Plaintiff's proposal came at the eleventh hour, and the Court then proceeded through the outstanding disputes quickly, at one point giving counsel three minutes to run through the instructions, as a hint that counsel should not find any errors. Tr.xx. Under those circumstances, it is reasonable that defense counsel did not make this *additional* argument that the retaliation claim should not go to the jury. While courts evaluating Rule 59(e) motions generally will not address new objections that could have been raised before the ruling at issue, *Daulatzai*, 97 F.4th at 178, Defendant lacked that meaningful opportunity in the unusual circumstances presented here, *see Gilliam v. Allen*, 62 F.4th 829, 844–46 (4th Cir. 2023). Moreover, Defendant did preserve its *claim* that the retaliation claim should not go to the jury, and so this Court should consider this *new argument* supporting that claim. *See Lebron v. Natl. R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995).

This Court should alter or amend the judgment under Rule 59(e) and vacate the jury's verdict on the retaliation claim. It then should issue its own determination in Defendant's favor on that claim because, as demonstrated above, Plaintiff failed to prove but-for causation.

### III. THIS COURT SHOULD EITHER GRANT REMITTITUR OR AWARD A NEW TRIAL ON DAMAGES

#### A. Back Pay

The jury's award of $6 million in back pay, ECF 110, at 2, cannot stand because Plaintiff's own evidence in support of back pay—and the sole evidence in the record—calculated the amount to be only $4,225,558. When a damages award is challenged as excessive, the Court evaluates "whether the jury's verdict is against the weight of the evidence or based on evidence which is false." *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001). This review requires the court to compare "the factual record and the verdict to determine their compatibility." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998). If the Court determines that a jury's damages award is excessive, "it is the court's duty to require a remittitur or order a new trial." *Eshelman v. Puma Biotech., Inc.*, 2 F. 4th 276, 285 (4th Cir 2021). A trial court has the discretion to "order[] a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Gasperini v. Ctr. for Humans.*, 518 U.S. 415, 433 (1996).

Plaintiff's sole evidence for back pay consisted of testimony by Dr. Moore. Tr.xx–xx. His supplemental report—which was not itself admitted into evidence but was the basis of a demonstrative shown to the jury, Tr.xx—opined that the back pay damages suffered by Plaintiff are approximately $4,225,558, ECF 106-1, at 7, and that front pay damages that Plaintiff would suffer are approximately $28,093,819, ECF 106-1, at 7. Consistent with his report, Dr. Moore testified that his opinion was that the economic damages in this case equaled $32,319,373. Tr.xx. Likewise, Plaintiff argued to the jury in closing that the back pay amount should be $4,225,058.

Tr.xx.  Plaintiff never sought $6 million in back pay, nor did he offer any evidence to support such an amount.

Nevertheless, the jury inexplicably awarded $6 million, which is nearly $1.8 million more than Plaintiff requested or supported with evidence.  The award is thus plainly against the weight of the evidence and must be reduced accordingly.  *See Staudner v. Robinson Aviation, Inc.*, 853 F. App'x 806, 811 (4th Cir. 2021) (per curiam); *Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 34 (1st Cir. 1999).  This Court should order that, unless Plaintiff agrees to reduce the back pay award to $4,225,558, a new trial must be held on this issue.

### B.    Front Pay

The jury's award of $14 million in front pay, ECF 110, at 2, also cannot stand, both because it rests on speculation rather than reliable evidence and because it is legally foreclosed by Plaintiff's subsequent employment history.  "The purpose of awarding front pay is to provide resources to a wrongfully terminated plaintiff to … bridge a time" until "the plaintiff is reasonably likely to obtain other employment" that is reasonably comparable.  *Hunter v. Town of Mocksville*, 897 F.3d 538, 562 (4th Cir. 2018).  "There is no precise formula for determining whether or in what sum an award of front pay should be made."  *Loveless v. John's Ford, Inc.*, 232 F. App'x 229, 238 (4th Cir. 2007) (per curiam); *see Hunter*, 897 F.3d at 563 (listing "several non-exclusive factors routinely considered").  "Because of the potential for windfall," the use of front pay "must be tempered."  *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1424 (4th Cir. 1991).  Ultimately, "[a] plaintiff has the burden of showing [he] is entitled to front pay; indeed, when a party fails to provide the court with the necessary data to calculate a *reasonably certain* front pay award, the court may deny the front pay request."  *Benson v. Thompson Cadillac-Oldsmobile, Inc.*, No. 5:04-CV-237-F(1), 2006 WL 8438575, at *17 (E.D.N.C. July 18, 2006) (cleaned up and emphasis added), *aff'd*, 287 F. App'x 249, 257 (4th Cir. 2008) (per curiam).

16

Plaintiff failed to meet his burden to provide reliable evidence establishing entitlement to any front pay—let alone $14 million. He relied solely on the testimony of Dr. Moore, who based his opinion on faulty assumptions when estimating *both* what Plaintiff would have earned had he not been terminated *and* what Plaintiff will earn in the future. As to the former, Dr. Moore testified that he did *not* average Plaintiff's income from 2017 to 2020, years in which he earned less than the 2021 income that formed the basis of the front-pay calculation, Tr.xx–xx, and he did *not* consider whether Plaintiff's employment would have continued absent alleged discrimination, Tr.xx. As to the latter, Dr. Moore assumed that Plaintiff's replacement income would *never* grow past $500,000, Tr.xx–xx, and he did *not* analyze the market demand for Plaintiff's occupation, Tr.xx–xx. Finally, with respect to Plaintiff's likely retirement age—which is critical to both sides of the calculation—Dr. Moore testified that he did *not* analyze Plaintiff's current wealth or his wife's financial situation, and he also did not consider the average retirement ages of workers who hold positions similar to Plaintiff's. Tr.xx–xx.

Given these glaring methodological defects, the jury's front pay award is unsupported by the evidence and was not calculated with reasonable certainty. *See, e.g.*, *Benson*, 287 F. App'x at 257 (affirming front-pay denial where "no proof was submitted as to Plaintiff['s] work expectancy, the relative success of her business" after her termination, or "the growth potential for business" (cleaned up)); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1529 (1st Cir. 1991) (reducing front-pay award because there was no obvious reason why plaintiff, a former operations manager, "should not have been able to work his way up from management trainee to a supervisory position" at a new job); *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 761–62 (D. Md. 2001) (rejecting plaintiff's request for 15 years of front pay and instead granting just four years in light of defendant's "significant funding cut backs" that decreased likelihood of plaintiff's

continued employment there); *Fernandez v. N. Shore Orthopedic Surgery & Sports Med., P.C.*, 79 F. Supp. 2d 197, 204 (E.D.N.Y. 2000) (reducing front-pay award because it was "unlikely and highly speculative" to assume that plaintiff "will not be able to secure employment for the next six years" given he was "highly skilled … with approximately 32 years of experience").

In all events, the front-pay award is legally foreclosed by Plaintiff's subsequent employment history. The record shows that Plaintiff left a more lucrative role at Brean Capital for a commission-only position at Academy. Tr.xx–xx, xx (Billesdon). Where a plaintiff "secured comparable, if not precisely equivalent, work," front pay should be denied even if the compensation was considerably lower. *See Dotson v. Pfizer, Inc.*, 558 F.3d 284, 300 (4th Cir. 2009) (28% less). Moreover, courts in this Circuit and elsewhere have held that "refusing a substantially equivalent job" constitutes a "failure to mitigate and any front-pay award [is] foreclosed." *Dominic v. Consol. Edison Co. of N.Y., Inc.*, 822 F.2d 1249, 1258 (2d Cir. 1987); *see Gries v. Zimmer, Inc.*, 795 F. Supp. 1379, 1384 (W.D.N.C. 1992).

Simply put, the jury's $14 million front pay award has no basis in the evidence or the law. The Court should therefore order a new trial.

### C. Emotional Distress And Punitive Damages

The jury awarded Plaintiff $100,000 in damages for emotional distress and $1 million in punitive damages for his ADA claims, ECF 110, at 3, but the ADA imposes a $300,000 cap on compensatory and punitive damages for employers of Defendant's size, 42 U.S.C. § 1981a(b)(3)(D). At the very least, therefore, the ADA punitive damages award must be reduced to $200,000 because the total amount of compensatory and punitive damages may not exceed the statutory cap. *See Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 620 (4th Cir. 2007).

18

Moreover, if the verdict on Plaintiff's North Carolina wrongful-discharge claim is set aside, *see supra* at Part I.C, then the $1 million in punitive damages for that claim, ECF 110, at 4, must be set aside too. And if the Court determines that all claims other than the ADA retaliation claim fail, *see supra* at Part I.A-C, then the entire award of punitive damages and emotional distress damages must be set aside, as the ADA does not authorize such damages for that particular claim, *see supra* at Part II.

## CONCLUSION

The Court should grant Defendant judgment as a matter of law on all of Plaintiff's claims. In the alternative, the court should grant Defendant a new trial on those claims, including a bench trial and judgment in Defendant's favor on the ADA retaliation claim. If the Court allows at least some of the liability verdicts to stand, it should grant Defendant a new trial on damages, unless Plaintiff accepts a remittitur reducing the back pay award to $4,225,558 and reducing the front pay award to $0. At the very least, the Court should amend the judgment to reduce the punitive damages on the ADA claims to $200,000. Moreover, if the North Carolina wrongful-discharge verdict is set aside, then the punitive damages for that claim must be set aside too; and if the only claim that survives is the ADA retaliation claim, then all of the punitive damages and emotional-distress damages must be set aside.

This the 26th day of August, 2024.

Hashim M. Mooppan (pro hac vice)
**JONES DAY**
51 Louisiana Ave., NW
Washington, DC 20001
Telephone: (202) 879-3744
Facsimile: (202) 626-1700
hmmooppan@jonesday.com

Respectfully submitted,

By:     */s/ David I. Klass*
David I. Klass (NC Bar No. 53342)
Lucy M. Anderson (NC Bar No. 49043)
**FISHER PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
Telephone: (704) 334-4565
Facsimile: (704) 334-9774
dklass@fisherphillips.com
lmanderson@fisherphillips.com

19

Terri L. Chase (pro hac vice)
**JONES DAY**
600 Brickell Ave., Suite 3300
Miami, FL 33131
Telephone: (305) 714-9722
Facsimile: (305) 714-9799
tlchase@jonesday.com

Julia W. Clark
**FISHER PHILLIPS LLP**
Two Logan Square
Suite 100
N. 18th Street
Philadelphia, PA 19103
Telephone: (610)230-6119
Facsimile: (610)230-2151
jclark@fisherphillips.com

Suzanne K. Michael
**FISHER PHILLIPS LLP**
1700 7th Avenue
Seattle, WA 98101
Telephone: (206) 247-7010
Facsimile: (206) 442-9699
smichael@fisherphillips.com

*COUNSEL FOR DEFENDANT*

20

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that as reported by word processing software, the foregoing Memorandum (omitting the caption, tables, and certificates) contains 5,975 words and therefore complies with the limits set forth in the Orders entered by the Honorable Frank D. Whitney.

This the 26th day of August, 2024.

Respectfully submitted,

By:    */s/ David I. Klass*
David I. Klass
**FISHER PHILLIPS LLP**

21

## CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE

In accordance with this Court's Standing Order, *In Re: Use of Artificial Intelligence* (June 18, 2024), the undersigned hereby certifies that—

1.  No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2.  Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 26th day of August, 2024.

Respectfully submitted,

By:     /s/ David I. Klass
        David I. Klass
        **FISHER PHILLIPS LLP**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date listed below, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send electronic notice to Plaintiff's counsel:

L. Michelle Gessner, Esq.
Gessner Law, PLLC
602 East Morehead Street
Charlotte, NC 28202
michelle@mgessnerlaw.com

This the 26th day of August, 2024.

Respectfully submitted,

By:     */s/ David I. Klass*
David I. Klass
**FISHER PHILLIPS LLP**

23