UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00160-FDW-SCR

| | |
|---|---|
| CHRISTOPHER JOHN BILLESDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| WELLS FARGO SECURITIES, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial and to Amend the Judgment (Doc. No. 117), and Plaintiff's Motion to Amend/Correct the Clerk's Judgment, (Doc. No 119). These matters have been fully briefed, (Doc. Nos. 118, 120, 121, 122, 123) and are ripe for ruling. For the reasons set forth below, Defendant's Motions for Judgment as a Matter of Law or, in the Alternative, for a New Trial are DENIED and Defendant's Motion to Amend the Judgment is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

In the interest of judicial economy, the Court declines to rehash all the testimony, evidence, and arguments presented at the five-day jury trial in this matter. In sum, this cause of action arose from Defendant Wells Fargo's decision to discharge Plaintiff Christopher Billesdon, a highly compensated member of the bank's asset-backed finance group. Plaintiff became disabled after he suffered an accident at eighteen years old and had been living with a neurogenic bladder and paralytic bowel his entire twenty-five-year tenure with Wells Fargo. After moving to a work-from-home model during the COVID-19 pandemic, in 2021 Defendant started planning for its "return

1

to office." Plaintiff, whose disability progressed with age, requested an accommodation that would allow him to continue working from home. Before Wells Fargo required employees to return to the office, Plaintiff was added to a reduction in force and discharged. His accommodation request was closed without a resolution.

Plaintiff filed this lawsuit, and four causes of action survived dispositive motions: (1) failure to accommodate under the Americans with Disabilities Act; (2) Disability Discharge under the ADA; (3) wrongful discharge in violation of North Carolina public policy; and (4) retaliation under the ADA. Defendant denied Plaintiff's discharge was at all related to his disability, citing business conditions. Plaintiff argued the timing of his discharge and other circumstantial evidence supported the inference that he was fired because of his disability and need for an accommodation.

At the close of evidence, Defendant made an oral motion for judgment as a matter of law on all claims. The Court denied Defendant's motion and submitted all claims to the jury. After several hours of deliberation, the jury returned a verdict in favor of Plaintiff on all claims. The Clerk entered judgment consistent with the jury's verdict on July 29, 2024, (Doc. No. 111), and the parties timely filed the instant post-trial motions. Discussion of other background information and evidence is set forth more fully below as needed to explain the Court's rulings.

## II. STANDARD OF REVIEW

**A.      Renewed Motion for Judgment as a Matter of Law**

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," a court may grant a motion for judgment as a matter of law against the party. Fed. R. Civ. P. 50(a). Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, a party may renew a

2

Case 3:23-cv-00160-FDW-SCR     Document 124     Filed 03/31/25     Page 2 of 15

motion for judgment as a matter of law made but denied during trial, and if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may affirm the jury's verdict, order a new trial, or enter judgment as a matter of law. Fed. R. Civ. P. 50(b).

However, the Fourth Circuit has consistently held a court may not "weigh the evidence, pass the credibility of witnesses, or substitute our judgment of the facts for that of the jury." Lust v. Clark Equip. Co., 792 F.2d 436, 437–38 (4th Cir. 1986) (quoting Tights, Inc. v. Acme-McCrary Corp., 541 F.2d 1047, 1055–56 (4th Cir. 1976)). Still, "conjecture and speculation from the nonmovant are insufficient to overcome a motion for judgment as a matter of law." United States SEC v. Clark, 60 F.4th 807, 813 (4th Cir. 2023) (citing Moskos v. Hardee, 24 F.4th 289, 299 (4th Cir. 2022)). "When a jury verdict has been returned, judgment as a matter of law may be granted only if, viewing the evidence in a light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party." Int'l Ground Transp., Inc. v. Mayor of Ocean City, 475 F.3d 214, 218–219 (4th Cir. 2007).

**B.     Motion for a New Trial**

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, the Court may "grant a new trial on all or some of the issues." Fed. R. Civ. P. 59(a)(1). A partial new trial is permissible if the "issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1381 (Fed. Cir. 2013) (quoting Gasoline Prods. Co. v. Champlin Ref. Co., 283 U.S. 494 (1931)). The decision to grant or deny a motion for new trial ultimately "rests with the sound discretion of

the district court" and is reviewed for a "clear abuse of discretion." Bristol Steel & Iron Works v. Bethlehem Steel Corp., 41 F.3d 182, 186 (4th Cir. 1994) (citations omitted).

In considering a motion for a new trial, the Court "should grant a new trial only if '1) the verdict is against the clear weight of the evidence, 2) is based on evidence which is false, or 3) will result in a miscarriage of justice.'" Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003) (quoting Dennis v. Columbia Colleton Med. Ctr., 290 F.3d 639, 644–45 (4th Cir. 2002)). Unlike a motion for judgment as a matter of law, the district court may weigh evidence, assess credibility, and exercise its discretion in ruling on a motion for a new trial. See Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998); Bristol Steel, 41 F.3d at 186. "Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." Fed. R. Civ. P. 61.

**C.     Motion to Amend the Judgment**

Rule 59(e) is intended to allow a district court "to correct its own errors [to] 'spar[e] the parties and the appellate courts the burden of unnecessary appellate proceedings.'" Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (quoting Russel v. Delco Remy Dev. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995)). Thus, a court may grant a motion under Rule 59(e) to alter or amend a judgment if it finds "that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 411 (4th Cir. 2010). A Rule 59(e) motion seeking to "raise arguments which could have been raised prior to the issuance of the judgment" is not proper. Pac. Ins. Co., 148 F.3d at 403.

4

## III.  ANALYSIS

A. **Defendant's Renewed Motion for Judgment as a Matter of Law**

Defendant moves for renewed judgment as a matter of law on all four claims tried to the jury, arguing: (1) it provided Plaintiff a reasonable accommodation; (2) neither Plaintiff's disability nor his accommodation request were a but-for cause of his discharge; and (3) the jury's damages awards are speculative and unsupported by the evidence. Defendant argues its Motions under Rules 50(b) and 59(a) together, but Rule 50(b) demands a stronger showing to disregard the jury's verdict. Defendant has not met this demanding standard.

The Court concludes the evidence was sufficient for the jury to find Defendant failed to accommodate Plaintiff's disability, discharged him in violation of the ADA and North Carolina public policy, and retaliated against him for seeking an ADA accommodation. Both parties presented evidence regarding the reason Plaintiff was added to a "reduction in force" list and discharged. The jury believed Plaintiff's theory of the case. While a reasonable trier of fact could have drawn a different inference from the evidence presented at trial, when construing the evidence in the light most favorable to Plaintiff (and in support of the jury's verdict), substantial circumstantial evidence exists to support the jury's conclusions. In particular, the Court points to the testimony of Joanne Davis, a Wells Fargo employee and accommodation specialist, who testified about Plaintiff's accommodation request and his managers' comments. That testimony was supported by documentary evidence in the form of her near-contemporaneous notes. Accordingly, the Court denies Defendant's renewed motion for judgment as a matter of law.

5

Case 3:23-cv-00160-FDW-SCR     Document 124     Filed 03/31/25     Page 5 of 15

**B.      Defendant's Motion for a New Trial**

Defendant requests a new trial on substantially the same grounds on which they seek renewed judgment as a matter of law. Because different standards of review apply to the two Motions, the Court analyzes Defendant's Motion for a New Trial under Rule 59(a) separately.

1.      *Reasonable Accommodation*

After hearing the testimony and reviewing the evidence presented at trial, the jury concluded Defendant violated the ADA by failing to provide Plaintiff with a reasonable accommodation. (Doc. No. 110, p. 1.) And Defendant does not object to the jury instruction defining a reasonable accommodation under the ADA. (Doc. No. 118, p. 9.) However, Defendant argues a new trial is appropriate because Plaintiff was accommodated at all times—he was able to work from home until he was discharged—therefore there was no evidence from which a reasonable jury could have concluded he was not accommodated. (Id., pp. 9–11.) Defendant plucks helpful language from several cases—only one of which is binding on this Court—to argue it never failed to accommodate Plaintiff as a matter of law.

To begin, Tartaro-McGowan v. Inova Home Health, LLC does not require this Court to vacate the jury's verdict. 91 F.4th 158 (4th Cir. 2024). Defendant cites the case in support of the proposition that an accommodation is not unreasonable merely because non-disabled employees receive the same benefit. Id. at 169. However, Plaintiff did not argue he was not accommodated merely because all other Wells Fargo employees also continued to work from home in late 2021 and early 2022. The jury was properly instructed on this rule of law, and heard uncontested testimony that Plaintiff was discharged before Wells Fargo required him to return to the office. Nothing in the record indicates the jury's verdict was based on a misunderstanding of the facts or the law here.

Defendant's primary argument is any failure to accommodate in this case was speculative, as the court concluded in Alston v. Holy Cross Health, Inc., No. DLB-20-2388, 2023 WL 2743332 (D. Me. Mar. 31, 2023). There, a respiratory therapist argued his former employer terminated him because he was immunocompromised and could not treat patients in "negative pressure isolation rooms." Id. at *1, 9. The plaintiff was never required to treat a patient in a negative pressure isolation room, and the district court concluded he could not sustain a failure to accommodate claim because "[t]he speculative possibility of being denied an accommodation in the future is not enough . . . ." Id. at *10 (D. Me. Mar. 31, 2023) (citing Kelly v. Town of Abingdon, 558 F. Supp. 3d 289, 305 (W.D. Va. 2021)). But Alston also never formally requested an accommodation. Further, his supervisors were unaware of his disability, and he was terminated for performance-related reasons. Id. at *10–12 (concluding supervisors terminated plaintiff for repeatedly clocking out early without permission). Unlike in Alston, Plaintiff's managers and Wells Fargo's human resources department were aware of his disability and accommodation request. The jury heard evidence that Plaintiff's managers told Joanne Davis they intended to "push back" and deny Plaintiff's request and ignored internal advice recommending a trial period during which Plaintiff would be permitted to telecommute regardless of Wells Fargo's return-to-office date. Under these circumstances, a reasonable jury could and did conclude Plaintiff experienced more than the "speculative" possibility of being denied an accommodation.

The undersigned is similarly not persuaded the Eleventh Circuit's decision in Batson v. Salvation Army, 897 F.3d 1320 (11th Cir. 2018), requires the Court to overturn the jury's verdict here. There, an auditor whose position required some travel requested an accommodation due to her multiple sclerosis. Id. at 1323. The record demonstrated her employer intended to deny her accommodation request, but she went on leave under the Family Medical Leave Act and was then

7

terminated before her request was denied. The court concluded she could not sustain her claim "without evidence of a specific instance in which she needed an accommodation and was denied one." Id. at 1326. The Court declines to adopt such a *per se* rule to vacate a jury verdict here. The documentary evidence made clear Plaintiff never "received his requested accommodation." (Doc. No. 118, p. 9.) Davis closed the request without a resolution, and Plaintiff was left to wonder what would happen when Wells Fargo's return-to-office plan was executed, and when.

While the Court may weigh the evidence and assess the credibility of witnesses in evaluating a motion for a new trial, the Court declines to second-guess the jury's credibility assessments considering the evidence admitted at trial here. Defendant's witnesses were impeached with documentary evidence on more than one occasion, and that testimony was sufficient for the jury to call into question their credibility. Davis's near-contemporaneous notes detail Plaintiff's managers' intention to refuse his accommodation request. For these reasons, the Court cannot conclude the jury's verdict on Plaintiff's failure to accommodate claim went against the clear weight of the evidence.

2. *ADA Disability Discharge*

Defendant argues Plaintiff failed to establish his disability was a but-for cause of his discharge because he would have been discharged "all else being equal." (Doc. No. 118, p. 11.) The question, however, is whether Plaintiff presented enough evidence for a reasonable jury to determine his disability was a but-for cause of his discharge. The Court concludes he did so.

As the Court set forth in its instructions to the jury, to succeed on this claim Plaintiff must have presented evidence sufficient for a reasonable jury to conclude that but-for his disability (that

is, if he were not disabled), the Defendant would not have terminated his employment. See Kelly, 90 F. 4th at 169.[1]

Defendant argues the jury's verdict should be set aside because its "witnesses consistently testified that Plaintiff was included within a reduction in force for business reasons, not because he was disabled." (Doc. No. 118, pp. 11–12.) But the jury also heard contrary evidence and was entitled to weigh the credibility of witness testimony. Jennifer Doyle's testimony about when and how Plaintiff was added to the reduction-in-force includes one such example. When Plaintiff's counsel questioned Doyle concerning an email from Human Resources about adding Plaintiff to the closed Fitzhugh reduction in force, Doyle insisted there were exceptions to company policy that were not included in the message, and it was "just a typical email." And Davis's notes indicated Plaintiff's managers were skeptical about Plaintiff's ability to do his job despite his disability and expressed an intent to "push back." A reasonable jury could infer animosity towards Plaintiff because of his disability based on this evidence and testimony.

3.    *ADA Retaliation*

Defendant argues it is entitled to a new trial on Plaintiff's ADA retaliation claim because Plaintiff did not present evidence sufficient to allow a reasonable jury to conclude his accommodation request was a but-for cause of his discharge. The Court disagrees.

To succeed on an ADA retaliation claim, a plaintiff must demonstrate he engaged in an activity protected by law and then, because of this, the defendant took an adverse action against him. Lashley v. Spartanburg Methodist Coll., 66 F. 4th 168, 173 (4th Cir. 2023). Where, as here,

---

[1] To the extent Defendant asserts the same arguments raised at the charge conference concerning whether Plaintiff's disability must have been "the but-for cause" or "a but-for cause" of his discharge, the Court reaffirms its ruling that the correct standard is "a but-for cause" under Gentry v. East West Partners Club. Management Co. Inc., 816 F.3d 228 (4th Cir. 2016).

9

Case 3:23-cv-00160-FDW-SCR    Document 124    Filed 03/31/25    Page 9 of 15

the defendant articulates a nonretaliatory reason for its actions, the plaintiff must show that reason is pretext and persuade the jury he was the victim of unlawful retaliation. Id. at 174.

At bottom, the jury heard ample evidence in support of Wells Fargo's purported reason for terminating Plaintiff—a reduction in force due to business conditions. But is also heard significant evidence to support the conclusion that this was pretext. For example, mere weeks after Joanne Davis started actively working Plaintiff's accommodation request, Plaintiff's managers added him to a reduction in force list that had been previously closed. While Doyle testified this was "normal," the jury also heard testimony it was contrary to Wells Fargo's own policies. Further, none of the documentary evidence supported Plaintiffs' managers' contentions that his name was being raised for a potential reduction in force earlier in the year, before his accommodation request. It appears the jury did not credit their testimony, particularly in the face of Davis's near-contemporaneous notes, and the Court will not disturb the verdict based on a credibility determination alone.

**C.      Motions to Amend Judgment**

   1.     *ADA Retaliation Claim*

Defendant argues it had insufficient notice of Plaintiff's ADA retaliation claim, and that it was clear error to send that claim—which permits only equitable relief—to the jury. (Doc. No. 118, pp. 18–19.)

Defendant's argument that it "had no meaningful opportunity to raise this issue before the retaliation claim was sent to the jury" is not well-taken. (Doc. No. 118, p. 19.) This case was set for trial during the Court's May 2024 mixed trial term, which began with Docket Call on May 7, 2024. A criminal matter set for that same term, United States of America v. Ashley Nicole Cross, Case No. 3:23-cr-00198, was also ripe for trial and proceeded first, consistent with the Speedy

10

Case 3:23-cv-00160-FDW-SCR     Document 124     Filed 03/31/25     Page 10 of 15

Trial Act[2] and this Court's practice. As of May 6, 2024, the undersigned anticipated both trials would proceed during the May 2024 mixed trial term. The Court held final pretrial conferences in both matters on May 7, 2024. (Minute Entry, May 7, 2024.) During the pretrial conference in this case, the Court concluded Plaintiff's complaint put Defendant on sufficient notice of his ADA retaliation claim.

Trial in United States v. Cross proceeded for eight days, and the jury did not return a verdict until May 17, 2024. For this reason, there was insufficient time during the May trial term to proceed to trial in this case and the Court continued the trial to a peremptory setting beginning July 22, 2024. (Doc. Nos. 97, 102.) Seventy-seven days passed between the date on which the Court ruled Defendant was on notice of Plaintiff's ADA retaliation claim and the date upon which trial began. During that time, the Court presided over at least one informal telephone conference to discuss the trial schedule with the parties, and both parties filed various Motions and other pleadings. (See Doc. Nos. 97, 98, 99, 100, 101, 102.) At no point during that time did Defendant raise this issue. The Court concludes the issue has been waived and is not a proper basis to amend the judgment. See Daulatzai v. Maryland, 97 F.4th 166, 178 (4th Cir. 2024) ("[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued.") (quoting Banister v. Davis, 590 U.S. 504, 508 (2020)); Pac. Ins. Co., 148 F.3d at 403.

The Court will also not disturb the jury's verdict based on Defendant's argument under Israelitt v. Enterprise Services LLC, 78 F.4th 647 (4th Cir. 2023). As a matter of law, had Plaintiff's ADA retaliation claim gone forward alone he would not have been entitled to a jury trial. But it did not go forward alone—his claims for failure to accommodate and discriminatory discharge under the ADA and North Carolina law survived summary judgment. And the interests

---

[2] United States v. Cross, 3:23-cr-00198, Doc. No. 17 (Feb. 23, 2024) (tolling the speedy trial clock through the Court's May 2024 trial term) (citing 18 U.S.C. §§ 3161(h)(7)(A), (B)(i), (B)(ii)).

11

of judicial economy do not counsel bifurcation of trial under such circumstances—particularly where Defendant did not raise the issue.

2. *Damages*

Defendant contends the jury's awards of back and front pay must be reduced because the back pay award is unsupported by the evidence and the front pay award is unduly speculative. Defendant further contends the Court must amend the final judgment because the jury awarded Plaintiff punitive damages on his ADA claim in excess of the statutory cap.

The jury awarded Plaintiff $6 million in back pay and $14 million in front pay. (Doc. No. 110, p. 2.) At trial, Plaintiff's expert Dr. Craig Nelson Moore testified concerning Plaintiff's economic damages. The Court certified him as an expert in economic damages under Rule 702 of the Federal Rules of Evidence. At the close of his direct testimony, Dr. Moore opined the value of economic damages in this case to be in excess of $32 million. The jury also heard defense counsel's cross-examination of Dr. Moore concerning his methods, Plaintiff's expected retirement age, and uncertainty concerning Plaintiff's income given his line of work and market conditions. A new trial is appropriate only where the jury's verdict is "against the clear weight of the evidence." Knussman v. Maryland, 272 F.3d 625, 639 (4th Cir. 2001) (considering whether the jury's award of emotional distress damages was excessive). The record includes ample evidence to support the jury's awards of back pay in front pay in this case, which involved highly compensated employes of a large national banking association. Cf. Staudner v. Robinson Aviation, Inc., 853 F. App'x 806, 811 (4th Cir. 2021) (concluding a $600,000 back pay award was excessive where the jury was presented "with a clear back pay calculation" of half that amount and plaintiff was foreclosed from seeking front pay).

The jury awarded Plaintiff $1 million in punitive damages under the ADA, which Defendant argues must be reduced. Plaintiff opposes, arguing the jury's award of $1 million in punitive damages need not be reduced because there is no statutory cap under the North Carolina wrongful discharge claim. However, the verdict sheet makes clear the jury awarded $1 million in punitive damages under the ADA and North Carolina state law *separately*. (Doc. No. 110, pp. 3, 4.) Thus, punitive damages under the ADA must be reduced to the statutory cap of $300,000.[3] See 42 U.S.C. § 1981a(b)(3)(D). It is therefore this Court's duty to require remittitur or a new trial and the Court grants Defendant's Motion *nisi* remittitur as to this issue. Plaintiff shall agree to remit $700,000 in punitive damages under the ADA by filing a document no later than April 11, 2025, indicating he agrees to remittitur. Plaintiff's failure to do so will result in the Court granting a new trial on the issue of damages.

3. *Prejudgment Interest*

Plaintiff asks the Court to amend the judgment to include prejudgment interest of eight percent on the jury's compensatory damages award under North Carolina General Statute § 24-5(b).[4] Defendant opposes this request in large part by reiterating the arguments the Court has already addressed above. However, Defendant argues even if Plaintiff is entitled to prejudgment interest it should be on the jury's back pay award only, at a blended rate, and should accrue from when backpay wages would have been earned. (Doc. No. 120, pp. 7–12.)

As a general matter, prejudgment interest is a remedy left to the Court's discretion. See Maksymchuk v. Frank, 987 F.2d 1072, 1077 (4th Cir. 1993) (citing United States v. Gregory, 818

---

[3] Defendant argues they must be reduced to $200,000 to account for the $100,000 in emotional distress compensatory damages. However, based on the verdict sheet, the jury's $100,000 award of compensatory damages for emotional distress may have accounted for the ADA claim or the North Carolina wrongful discharge claim, which does not include a statutory cap. (Doc. No. 110, p. 3.) The Court will therefore Order remittitur only on the portion of damages clearly in excess of the statutory cap under the ADA.

[4] Because the outstanding remittitur issue affects only punitive damages and not compensatory damages, the Court concludes Plaintiff's Motion to Amend is ripe for ruling without delay.

F.2d 1114, 1118 (4th Cir. 1987)). The rate of interest is likewise left to the Court's discretion. See Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1031 (4th Cir. 1993) (en banc); see also Hylind v. Xerox Corp., 481 F. App'x 819, 822 (4th Cir. 2012) (unpublished). The Court may, but is not required, to apply the interest rate provided for by state law. EEOC v. Liggett & Myers, 690 F.2d 1072, 1074 (4th Cir. 1982). The Fourth Circuit has affirmed the application of state statutory prejudgment interest rates to backpay awards. See Liggett & Myers, Inc., 690 F.2d at 1074 (affirming use of North Carolina's statutory interest rate).

At bottom, it is this Court's view that some amount of prejudgment interest in this case is mandatory. N.C. Gen. Stat. § 24-5(b). "Both North Carolina courts and the Fourth Circuit, in an unpublished opinion, have recognized that an award of prejudgment interest is mandatory." Bridgetree, Inc. v. Red F. Mktg. LLC, No. 3:10-CV-00228-FDW, 2013 WL 443698, at *21 (W.D.N.C. Feb. 5, 2013); see also Castles Auto & Truck Serv., Inc. v. Exxon Corp., 16 F. App'x 163, 168 (4th Cir. 2001) (concluding that subsection 24-5(b) is "unambiguously mandatory"); Hamby v. Williams, 676 S.E.2d 478, 481 (N.C. Ct. App. 2009) (same).

Defendant cites no authority that is binding on this Court in support of its argument for a blended rate or staggered accrual in a discrimination case, as opposed to a breach of contract case. This Court has regularly applied the North Carolina legal interest rate in cases involving federal claims. See, e.g., Eschert v. City of Charlotte, No. 3:16-cv-295-FDW-DCK, 2017 WL 3840275, at *5 (W.D.N.C. Sept. 1, 2017) (applying North Carolina legal interest rate to damages under the First Amendment and state law). Therefore, the Court concludes Plaintiff shall be awarded prejudgment interest at the legal rate of eight percent on the jury's compensatory damages award

of $6.1 million.[5] The Court will amend the judgment to include eight percent prejudgment interest on $6.1 million from March 14, 2023, to July 29, 2024, in the total amount of $673,841.10, which will continue until the judgment is satisfied under N.C. Gen. Stat. Section 24-5(b). Because the Court concludes prejudgment interest under North Carolina General Statute 24-5(b) is appropriate, it will not address Plaintiff's alternative argument for prejudgment interest from Plaintiff's date of discharge through the date of judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment as a Matter of Law and in the Alternative Motion for a New Trial and Motion to Alter Judgment, (Doc. No. 117), is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion is **GRANTED** *nisi* remittitur as to the jury's ADA punitive damages award only, which exceeds the statutory cap.

**IT IS FURTHER ORDERED** that Plaintiff is **DIRECTED** to file a document no later than April 11, 2025, indicating he agrees to remittitur of $700,000 in punitive damages under the ADA. Failure to do so will result in the Court granting a new trial on the issue of damages.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Amend the Judgment, (Doc. No. 119), is **GRANTED IN PART**.

Signed: March 21, 2025

Frank D. Whitney
Senior United States District Judge

---

[5] Defendant's argument that the Court cannot award prejudgment interest on the jury's $100,000 emotional distress award is not well-taken because, as discussed above, it is not evident from the verdict whether the jury awarded those damages under the ADA or Plaintiff's state wrongful discharge claim.